*38 Vroom.* Mott Iron Works v. Gunn.

THE J. L. MOTT IRON WORKS, DEFENDANT IN ERROR, v. JOHN GUNN ET AL., PLAINTIFFS IN ERROR.

Argued March 17, 1902—Decided June 16, 1902.

1. Certain contractors gave to a corporation, who had furnished and was about to furnish to a subcontractor material for the work, a writing as follows: "RAHWAY, N. J., Janry 17, 1900. *To the J. L. M. Iron Works:* GENTLEMEN—We herewith guarantee to you payment for all the material for the buildings for the N. J. state reformatory at Rahway, N. J., that the S. C. Co. has ordered or will order of you and that you have already shipped and will hereafter ship and consign to us. * * * It is understood that we shall make to you payments from month to month as the work done by the S. C. Co. is passed for payment by the heating engineer architect and the board of commissioners. The balance when the last goods supplied by you has been used and accepted—but at all times we guarantee to you payment for all you supply and ship to us. J. G. & Co." *Held*, that the guaranty extended to material shipped for the reformatory before the date of the writing, though not consigned to the guarantors.

2. The subcontractor, after one payment only had been ordered and made, forfeited its contract, of which fact plaintiff was notified. The principal contractors relet the work, but were allowed by the reformatory commissioners a sum in excess of the value of the material that had been shipped up to that time. *Held*, that they were liable on their guaranty for the material shipped to date, notwithstanding no other payment had been ordered.

3. At the time the subcontract was forfeited there was material in process of manufacture that was never completed or shipped. *Held*, that the guarantors were not liable therefor unless they had dispensed with completion and shipment, meaning to remain liable on their guaranty, which was a question that should have been submitted to the jury; and that direction of a verdict in favor of the plaintiff for the cost of such material was erroneous.

On error to the Supreme Court.

For the plaintiffs in error, *Egbert J. Tamblyn.*

For the defendant in error, *Edward M. Colie.*

The opinion of the court was delivered by

COLLINS, J.   This writ of error removes a judgment recovered on verdict upon a written guaranty. The questions, raised by exceptions sealed at the trial, involve the construction of the writing and the propriety of the direction to the jury.

The defendants, who were the principal contractors to build the state reformatory, near Rahway, made a subcontract with the Siddall Contracting Company for the plumbing work. That company placed an order for specified material with the plaintiff, which the plaintiff was unwilling to accept without security.   At request of the subcontractor the defendants wrote to the plaintiff as follows:

"GENTLEMEN—Yours of the 12th inst. has been received— inquiring whether we will guarantee your payments for material furnished to the Siddall Contracting Co. to be used in the plumbing work of the new buildings at the New Jersey state reformatory, Rahway.   We beg leave to state that the Siddall Contracting Co. will receive eighty-five per cent. of the value of the work done every month, and that we will pay to you, provided the Siddall Contracting Co. give you an order, all or any amount the order will call for of the same eighty-five per cent. each and every month.   We would be pleased to have from you an approximate estimate of the total amount required to furnish all the materials for the plumbing contract."

The plaintiff thereupon shipped certain material and sent to the defendants for acceptance an order for the amount thereof, which the defendants declined to accept.  The plaintiff then refused to furnish any other material.   After correspondence and interviews, the following writing was signed by defendants and delivered to the plaintiff, namely:

"RAHWAY, N. J., Janry 17th, 1900.
*"To the J. L. Mott Iron Works:*

"GENTLEMEN:  We herewith guarantee to you payment for all the material for the buildings for the N. J. state reformatory at Rahway, N. J., that the Siddall Contracting Company

of Trenton, N. J., has ordered or will order of you and that you have already shipped and will hereafter ship and consign to us, namely, to John Gunn & Co., Rahway, N. J. This guarantee is limited to the amount of $———. It is understood that we shall make to you payments from month to month as the work done by the Siddall Contracting Co. is passed for payment by the heating engineer architect and the board of commissioners. The balance when the last goods supplied by you has been used and accepted—but at all times we guarantee to you payment for all you supply and ship to us.

"Yours truly,

"JOHN GUNN & CO."

At the time this writing was signed the plaintiff had shipped to the reformatory material to the value of $600.62. Afterwards they so shipped, consigned to the defendants, material to the value of $476.01. A payment of $200 was ordered by the reformatory commissioners on account of plumbing work and was received by the defendants, who forwarded to the plaintiff $140 thereof and paid to the Siddall Contracting Company the residue.

The reformatory commissioners were satisfied with the character of the material furnished by the plaintiff, but were not satisfied with the character of the work done by the Siddall Contracting Company, and refused to pass it for payment. The defendants, under a provision in the subcontract, gave the Siddall Contracting Company three days' notice to proceed with satisfactory performance. That company made default, and the plaintiff was notified of that fact. The defendants were allowed by the reformatory commissioners $930.19 for what had been done and furnished by the Siddall Contracting Company up to the time of the forfeiture of its contract, and then furnished the plumbing through another subcontractor. Little, if any, of the plaintiff's material was used, as the plumbing specifications were modified, with a corresponding modification in the defendants' contract.

The original order given by the Siddall Contracting Com-

pany to the plaintiff embraced a large number of water-closets of a specified kind.  While the Siddall Contracting Company were working under their contract a sample closet was shown to the reformatory commissioners, who objected to it, and insisted on closets of a different pattern, claiming that the specifications so warranted.  There was discussion on the subject and a suggestion of extra compensation.  The testimony left it uncertain whether the defendants acquiesced in the change, but it did appear that the Siddall Contracting Company ordered from the plaintiff, at an increased cost, closets of the pattern required by the commissioners.  The testimony also left it uncertain whether the defendants knew of this modification of the original order.

At the time the plaintiff was notified of the forfeiture of the Siddall company's contract the closets were in process of manufacture.  Up to that time the cost of labor and materials thereon was $1,029.45.  No further work was done on the closets.  If completed they would have been of little value to the plaintiff, being of a special design, not generally marketable.  The material in the uncompleted closets was worth only about $20 as junk.

The learned trial judge directed the jury to find in favor of the plaintiff for the value of the material shipped to the reformatory before the writing of January 17th, 1900, and for the value of the material shipped after that date and consigned to the defendants, and also directed the jury to find in favor of the plaintiff for the cost of the uncompleted water-closets.  On this subject he said: "As to the water-closets, it seems that the plaintiffs were always ready to ship them, and that it is no fault of theirs that they had not been shipped.  I think as to those the right of the plaintiffs to recover has been established."

We think a proper construction of the writing of January 17th, 1900, justifies the ruling of the trial judge in all respects except as to the uncompleted water-closets.  The writing plainly expressed that the guaranty of the defendants should extend to all plumbing material for the reformatory that had been previously shipped no matter to whom

consigned, and to all that should thereafter be shipped if consigned to the defendants. The failure to state the amount guaranteed left it limited only by the requirement that the material should be such as had been or should be ordered for the reformatory by the Siddall Contracting Company. As to material to be thereafter shipped, the provision for monthly payments was a privilege to the defendants, not a condition of their guaranty. The obligation to pay in full when the last goods supplied had been used and accepted was not inconsistent with an absolute guaranty of payment for all materials within the Siddall orders supplied and shipped to the defendants—expressed in the last clause of the writing, but indefinite as to time. The effect of the provision for monthly payments, as to material shipped before the writing was signed, need not be considered, both because, by the abrogation of the subcontract, the defendants rendered that provision unavailable to the plaintiff, and because the allowance made to the defendants by the reformatory commissioners fairly stands in substitution thereof.

But as to the uncompleted water-closets, we think the court usurped the function of the jury. It is very doubtful whether the change in the order, unless acquiesced in by the defendants, would come within the guaranty. But, even if acquiesced in, no liability arose until the closets were completed and shipped. On that point there is no room for doubt as to the meaning of the writing signed by the defendants. Of course, the guarantors might dispense with completion and shipment to themselves, and make their guaranty applicable to the cost of the uncompleted articles. Whether or not the evidence in the cause, oral and documentary, would have warranted the jury in inferring such a result, it certainly was not conclusive on that point.

Mr. John Gunn, who in the affair represented his firm, distinctly testified that when he made the new subcontract he did not know that the closets had been ordered from the plaintiff or were in process of construction. There is also documentary evidence, in a letter of December 13th, 1900, from the plaintiff to a representative of the reformatory com-

missioners, that is arguably inconsistent with any idea of a claim on the defendants for these uncompleted closets.

The question of liability for this part of the plaintiff's claim was clearly one for the jury.

There was no exception sealed on the affirmative direction to find in favor of the plaintiff, but we regard the point as effectually presented in the exception to a refusal to instruct the jury as requested that there could be no recovery for goods not shipped. Instead of a qualified refusal, there was an absolute direction for such a recovery.

For this reason there must be a reversal of the judgment, and a *venire de novo*.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VROOM. 14.