MARY L. SAWTER ET AL., ADMINISTRATORS WITH THE WILL ANNEXED, DEFENDANTS IN ERROR, v. ISAAC SHOENTHAL, SURROGATE OF ESSEX, PLAINTIFF IN ERROR.

Argued March 7, 1912—Decided June 20, 1912.

1. Under the requirement of the constitution that the object of an act must be expressed in its title, the true rule is that the object expressed must give notice of the effect of the legislation to one conversant with the existing state of the law. The validity of the title is not to be determined by nice distinctions of etymology or definition of words, but by the facts of the case and the history of the legislation.

2. The title of the act of 1909, entitled "An act to change and amend the title of an act entitled 'An act to tax intestates' estates, gifts, legacies, devises and collateral inheritances in certain cases,' approved May fifteenth, one thousand eight hundred and ninety-four" (*Pamph. L., p.* 304), sufficiently states the object of the legislation.

3. By the passage of the act of 1909 (*Pamph. L., p.* 304), amending the title of the act of 1894, the supplement of 1906, imposing a transfer tax, became enforceable legislation.

---

On error to the Supreme Court, whose opinion is reported in 52 *Vroom* 197.

For the prosecutors, defendants in error, *Frank H. Sommer* and *Ralph E. Lum* (*Edward A. Day,* on the brief).

For the plaintiff in error, *Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

SWAYZE, J.   The question raised in this case is the constitutionality and effect of the act of 1909 (*Pamph. L., p.* 304), which undertakes to change and amend the title of the act of 1894, imposing inheritance taxes.   The Supreme Court held that the object of the act is not expressed in the title.   This conclusion was rested in part at least upon a distinction explained at length in the opinion between the purpose and the object of legislation.   We are unable to adopt this distinction. If we are to go to the dictionaries for aid in the construction of the constitution, we find the words treated as synonymous. Webster's New International groups these words with others as synonyms under the definition of "intention."   The New English Dictionary gives as its first definition of "purpose," "that which one sets before oneself as a thing to be done or attained; the object which one has in view;" and as its third definition, "the object for which anything is done or made or for which it exists; the result or effect intended or sought; end; aim."   The same dictionary gives as its fifth definition of "object" "the end to which effort is directed, the thing aimed at; that which one endeavors to attain or carry out;

purpose, end, aim." These definitions are supported as usual in that monumental work by extracts from English authors covering the life of the language, some of them from legal writers of repute. So far as the argument rests upon a supposed difference of meaning between purpose and object, we think it lacks foundation. We are unwilling, however, to deal with the question of the constitutionality of a statute upon so narrow a basis as that afforded by lexicographers. We prefer and we think we are required to look at the matter from a different, if not a broader, point of view. There can be no doubt that the ultimate object of the legislature in passing the act of 1909 was to validate the act of 1906, imposing transfer taxes, which had then just been questioned in *Dixon* v. *Russell,* 49 *Vroom* 296, a case argued in the Supreme Court at November Term, 1908. We subsequently held the act invalid as far as it sought to impose a legacy duty because that object was not expressed in the title. *Dixon* v. *Russell,* 50 *Id.* 490. The intent of the legislature in 1909 was to put beyond question for the future an act which had been questioned but had not yet been declared invalid by the courts. We ought if possible to effectuate that legislative intent. It is not questioned that the language used in the act of 1909 is apt to effectuate the legislative purpose, if the title is sufficient to comply with the constitutional requirement. If the constitution means that the immediate object only should be expressed in the title, that is done in this act; the immediate object is, as the title declares, to change and amend the title of the act of 1894. It would, however, be going too far to say that in every case, it suffices to express the immediate object, although the ultimate object be left unexpressed. That would open the door to the abuse so forcibly suggested by the Supreme Court; and although we cannot logically argue from an abuse of power to a negative of it (*Fritts* v. *Kuhl,* 22 *Id.* 191 (at *p.* 205) ; *Pangborn* v. *Young,* 3 *Id.* 29, 40), yet we ought not to adopt a lax construction of an important constitutional limitation. The true rule is that the object expressed in the title must give notice of the effect of the legislation to one conversant with the existing state of the law. The validity of the

title is not to be determined by nice distinctions of etymology
or definition of words, but by the facts of the case and the
history of the legislation. Language which at one time may
be quite inadequate to warn the public of the object of legis-
lation, may at another, owing to custom or usage, be entirely
sufficient. A striking illustration is afforded by the legislation
as to riparian rights. The title of the original act is "An act
to ascertain the rights of the state and of the riparian owners
in the lands lying under the waters of the bay of New York
and elsewhere in the state." This would seem to indicate that
the object of the legislature was merely to ascertain the facts;
and yet under supplements to that act, commissioners have
been authorized to convey property of great value, and no one
now questions the validity of the legislation. The reason is
that regardless of the precise meaning of the original title, it
became by custom and usage generally known that under that
title the legislature would deal with the whole subject of
riparian lands. We have therefore sustained the validity of
the legislation although our attention was called to the diffi-
culty in the title. *Seaside Realty Co.* v. *Atlantic City,* 47
*Id.* 819.

In determining whether the title of the act of 1909 gave
notice of its ultimate object to one conversant with the existing
state of the law, it is essential to bear in mind what the law
then was. In 1906, the legislature as if in anticipation of our
decision in *Neilson* v. *Russell,* 47 *Vroom* 655, had attempted
to make a radical change in the Inheritance Tax act by sub-
stituting a transfer tax for the legacy duty imposed by the
act of 1894. The title of the act of 1906, however, unfortu-
nately indicated only that it was an amendment of the act of
1894, which latter act by its title purported to relate only to
the taxation of intestates' estates, gifts, legacies, devises and
collateral inheritances. The question of the validity of the
legislation under such a restricted title was then pending.
Under those circumstances anyone who knew, as everyone
must have known, from the title of the act of 1909, that its
immediate object was to amend the title of the act of 1906,
could not have failed to perceive that its ultimate object was

to avoid the constitutional difficulty that had been raised and make valid the act of 1906. The most natural and obvious, if not the only, reason for amending the title to an act is to make the title cover the subject-matter of the act. Everyone must, according to our legal maxim, be presumed to have known that the act of 1906, which was on the statute book and not yet declared defective, extended to transfers of decedent's estates and was not limited as the act of 1894 had been. With that knowledge, no one could help inferring that the probable object of changing the title was to make it co-extensive with the body of the act. We think that in the then known state of the statutory law, the title of the act of 1909 gave notice not only of the immediate object clearly expressed but of the ultimate object clearly implied.

Under our decision in *Allison* v. *Corker*, 38 *Vroom* 596, it is permissible for the legislature to validate an unconstitutional statute by subsequent legislation, provided that it is not attempted by an amendment of the title to import incongruous legislation into the existing statute. The illustrations given by Mr. Justice Collins indicate the line of cleavage. An act respecting wills, as he says, cannot by amendment of the title be given effect as to transactions *inter vivos;* but an act to repeal an unconstitutional act may be efficacious to compel payment of claims incurred under it, as was held in *Rader* v. *Township of Union*, 10 *Id.* 509. If now we look at the essential character of this legislation, it is plain that the legislature's object was to tax transfers of property occurring upon the death of the owner or made in contemplation of his death or to take effect at or after his death. The original legislation reached only certain kinds of transfer. The amendment of 1906 sought to make this more general and to reach all transfers in such cases. In common parlance all were spoken of as inheritance taxes and if the title of the act of 1894 had read "An act to tax estates and inheritances," it would have been broad enough to include the matter of the act of 1906. The Chief Justice, in Dixon *v.* Russell, went no farther than to hold the statute invalid as far as it was applicable to cases like the one then under consideration. The

difficulty, however, was that the title of the act of 1894 did not indicate that it was applicable to all estates but limited it to intestates' estates, and to legacy duties and collateral inheritances. Legacy duties, it had been held, were not succession taxes, and the words "intestates' estates" did not indicate a succession by virtue of a will. Succession by intestacy and succession by will are no doubt different, but they are not so different as to be incongruous subjects of legislation. A tax upon successions of either kind is a tax upon inheritances and such a tax was plainly indicated in the title of the act of 1894. Both this act and the act of 1906 dealt with taxation on the succession to property of decedents, and it was the transfer of such property that the new title purported to deal with. What we decided in Allison *v.* Corker was that an unconstitutional statute was not void but unenforceable, and that it might be imported into valid legislation by appropriate reference. When the title was amended by the act of 1909, the act of 1906 became enforceable. The tax in this case was properly imposed; the judgment of the Supreme Court must be reversed and judgment entered affirming the tax.

*For affirmance*—None.

· *For reversal*—THE CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY, JJ. 12.