IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURG 1868.

## Keasy *et al. versus* Bricker *et al.*

1. The steps preceding the issue of a mandamus are not to be assimilated to a proceeding in equity.

2. The ordinary practice is to award an alternative mandamus when the court is satisfied on affidavits that it should be issued as a matter of justice and right, to compel the performance of a duty for which there would otherwise be no adequate remedy; giving the party the opportunity to do the act or show cause at the return of the writ why he should not do it.

3. The respondent shows cause by making a return to the writ, which is the beginning of the pleadings.

4. The return may traverse the facts, or admitting them may avoid performance by stating a sufficient excuse, and the relator may demur, plead or traverse the facts in the return.

5. The Acts of April and August 1864, relating to bounties in Butler county, construed.

6. The people should not be taxed unless by their own consent or that of officers truly representing them.

November 16th and 17th 1868. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Butler county :* No. 130, of October and November Term 1868.

This was a proceeding commenced December 5th 1864, by the petition of Jacob Bricker and nine other qualified electors of Winfield township, Butler county, to the Court of Common Pleas, setting forth that money had been "loaned by citizens of the township or a committee acting for the people of the township with the condition or contract that the same would be refunded

(9)

[Keasy *v*. Bricker.]

to the citizens loaning the money—yet *four* of the school directors, to wit, Henry Keasy, John Cypher and James McLafferty, have neglected and refused to assess a tax to refund the money," &c., and praying the court to award a mandamus to compel the school directors to levy a tax for that purpose.

On the same day the court granted a rule on the directors to show cause why a mandamus to them should not be awarded, under two Acts of Assembly relating to the payment of bounties to volunteers in Butler county; one passed April 14th and the other, August 22d 1864, a supplement to the first: Pamph. L. 420, 980. The 1st section of the Act of April authorized the school directors to collect a tax to pay bounties to volunteers: section 3d provided, that where bounties had already been raised or might thereafter be raised and paid to volunteers, "by money subscribed, loaned, advanced or paid by or through individuals or committees acting for citizens and with the understanding or condition that the same should be repaid by taxation," the directors were required to repay such sums out of said moneys so collected.

The 1st section of the Act of August provided, that if any board of school directors "shall neglect or refuse to levy and collect a tax, under the provisions of the 1st section of the act to which this is a supplement, and a majority of the qualified electors of any of the said townships or boroughs shall have petitioned the said directors in favor of said taxation, then the Court of Common Pleas of said county shall, on petition of any ten of said electors, and upon due proof of all the facts, have power to proceed by mandamus, to compel the said board of directors to discharge the duties imposed upon them by this act, and the act to which this is supplementary."

Section 2d provided "that if any of said boards of school directors, or a majority of them, shall neglect or refuse to levy and collect a tax under the provisions of the 3d section of said act, then, on due proof of all the facts in the case, the ,court aforesaid shall have power to proceed, by mandamus, to compel the said defaulting boards of directors to discharge the duties so imposed upon them by said act."

After some further proceedings depositions were taken.

William Stewart testified: The second meeting, February 21st 1865, at which he presided, was the largest they had had; some of the citizens opposed being taxed; that raised a discussion as to how the township should be relieved from the draft. The proposition then was, that if one-half should be raised by subscription, the balance would be raised by taxation; it was put to vote by yeas and nays; there was no opposition; there were about one hundred people there.

Robert Galbraith testified, that at the meeting it was agreed

that every one there should be subject to a poll tax of $25, the balance to be raised by a tax on property; it was the understanding of the committee that legislation to save them from losses should be had.

James Simmons testified, that it was understood at the meeting that $2500 should be raised by subscription, and the remainder by taxation; many had been opposing the raising the fund by taxation; when the proposition about the $2500 was agreed to, their opposition was withdrawn. A number of other witnesses testified to the same facts; some testified that the whole amount to be raised was stated to be $4000. The witnesses, except Stewart, stated the number at the meeting variously from fifty to sixty-five persons. There was also in evidence an agreement signed by William Stewart, and twenty-two others, that they would be responsible to the executive committee for whatever money might be borrowed to complete the bounty fund for the township.

On the 14th of June 1866 an "amended bill" was filed. This bill set forth the borrowing of the money by a committee appointed by citizens of the township for the purpose of paying bounties to volunteers under the call of 1864 for 700,000 men; that the committee gave their individual obligations to persons loaning money for that purpose, and advanced their own money on condition that both the advanced and borrowed money should be repaid when the legislature should authorize the directors to levy a tax for the purpose; that such authority was obtained, and volunteers paid by the committee with the understanding that they should be repaid when the funds should be raised by taxation; that at a meeting of citizens, committees were appointed to solicit subscriptions to pay in advance of taxation "in anticipation of the same being refunded to those so advancing, loaning and subscribing," when the necessary legislation should be obtained. The bill then sets out the appointment of the committees, and that $1724 were subscribed by different persons, naming them and the sum subscribed by each; $259.50 of which had been refunded to those of the subscribers who had afterwards entered the military service of the United States; that in addition to the subscriptions, the committee had borrowed from a number of persons, naming them, $1482; that the committee expended about the business of procuring volunteers $177.61, and $2665 paid for bounties to volunteers, naming them; to which was to be added $200 interest, making the whole $3042.61, of which $1464.50 were raised by subscription, leaving $1578.11 to be raised by taxation, "or the sum of $3042.61 for the purpose of paying off borrowed money and interest thereon, money expended in procuring volunteers and in refunding to subscribers aforesaid the several sums advanced by them or loaned to said

[Keasy *v.* Bricker.]

township on condition that the same should be refunded by taxation."

The petition averred that the directors, notwithstanding they had "been repeatedly requested by the said creditors and other citizens of the district" to levy a tax to pay the above amounts, had refused to do so, and prayed for a mandamus to the directors to compel them to levy and collect a tax for that purpose. The court directed an alternative mandamus to issue.

The return to this mandamus set forth defects in the original petition, and averred that they could not be supplied by amendment, but were fatal. It set forth also a number of defects in the amended petition.

It further alleged that at the meeting of the citizens it was understood that it would be necessary to raise $4000 for bounties, of which $2500 was to be raised by subscriptions which were to be absolute gifts, and the remaining $1500 were to be raised by taxation; that the directors offered to raise and would have raised by taxation, money to repay that borrowed for bounties, but the demand by the committee included improper claims, and they would not submit to the board a statement of the claims; that the claim of the committee for expenses is a subject to be passed upon by the township auditors, and not in a proceeding by mandamus; that the claim being disputed, a mandamus would not lie until it was reduced to judgment. The return further admitted that there had been some money applied to the payment of bounties which the district ought to pay, and that the directors would not interpose the want of authority if the contract were proved by reasonable evidence; that they have always been willing and ready to hear such evidence and provide for claims which should seem equitable, but that no creditor has offered to make such proof.

A motion was afterwards made to dismiss the bills which was refused; a plea was filed April 20th 1868 and same day a replication was filed.

On the 25th of June 1868 the court decreed that "judgment be entered for the plaintiffs, and that the respondents, the school directors of Winfield township, are commanded at their next regular meeting for the transaction of business, to assess and collect the sum of $1600 of bounty tax according to law; and to issue their proper warrants to the collectors of county taxes, &c., for the collection thereof, and they are hereby required to repay the same, to wit, the sum of $1200, and the interest due thereon and their expenses thereon, not exceeding $177, in accordance with the opinion filed in this case, to the said committee, Robert Hesselgesser, William Keener and Robert Galbraith, for the use of the creditors of the township for money advanced, and for money advanced by themselves, and the said

[Keasy v. Bricker.]

respondents and directors to pay the costs of this proceeding, except," &c.

The respondents removed the case to the Supreme Court by writ of error; the various rulings of the court during the proceeding, and the final decree awarding a peremptory mandamus, were assigned for error.

*E. M. Bredin* (with whom was *J. M. Thompson*), for plaintiffs in error.—The amendment was not allowable because it changed the parties: Ward v. Stevenson, 3 Harris 22; Hartman v. Keystone Ins. Co., 9 Id. 475. An issue on the sufficiency of the return is equivalent to a demurrer: Commonwealth v. Commissioners of Allegheny, 8 Casey 221. The replication must specify the allegations of the return intended to be traversed: Commonwealth v. Commissioners of Allegheny, 1 Wright 279. The General Bounty Law of 25th March 1864 validates only contracts made with the municipal authorities: West Donegal v. Oldweiler, 5 P. F. Smith 259. The rights of the public cannot be waived by implication: Borough of Dunmore's Appeal, 2 P. F. Smith 374.

*C. McCandless* (with whom was *E. McJunkin*), for defendants in error.—The court had the power to permit amendments: Bright. Eq. § 698-704; Yohe v. Robertson, 2 Whart. 159. Insufficiency of a return is waived by replication: Commonwealth v. Commissioners of Allegheny, 8 Casey 221, 1 Wright 279.

The opinion of the court was delivered, January 4th 1869, by

AGNEW, J.—The steps which precede the issuing of a mandamus are not to be assimilated to a proceeding in equity, with all its attendant pleadings. The ordinary practice is to direct an alternative mandamus to issue when the court is satisfied on affidavits that the writ should be issued as a matter of justice and right, to compel the performance of an act or duty, for which otherwise there would be no·adequate remedy. This gives the party to whom it is directed an opportunity to do the act or to show good reason at the return of the writ why he should not do it. He does this by making a return to the writ. It is at this point the pleadings in the cause begin. The return may traverse the facts alleged in the writ; or admitting them may avoid performance by stating sufficient facts in excuse. The relator may then demur, plead to, or traverse the facts set forth in the return. Such is the ordinary practice recognised by the act relating to mandamus, but in this case all the pleadings were preliminary. First there was a petition, and then an amendment or substitute called an " amended bill." In reply a paper was filed called on the record " reasons why a mandamus should not be awarded," but in the paper itself styled a " return to the alternative manda-

[Keasy *v.* Bricker.]

mus." The first branch of this paper consists of numerous technical objections to the "petition" and "amended bill," and the second relates to the merits. Our opinion on the merits renders it unnecessary to consider this irregular mode of raising the issues in the case.

The claims for repayment by taxation set forth in the amended bill are two principal demands: 1st, for money subscribed to pay bounties; 2d, for money borrowed to pay bounties of individuals, by a committee of the citizens. It seems to be quite clear upon the evidence that the money subscribed was a voluntary and unconditional donation, and that no provision was made for its repayment by taxation. At the public meetings there were strong objections made to raising the whole sum necessary to pay bounties by general taxation. The total sum was estimated at about $4000; after much discussion it was resolved to raise from $1800 to $2500 by subscription, and the remainder by taxation. The result is stated by the Rev. William Stuart, who says, " my understanding was that we would raise by taxation the difference between the amount subscribed and the amount necessary to fill the quota of the township." The money borrowed was $1482. The borrowing of this sum on the condition of its being repaid by taxation appears to have had the general assent of the citizens, and the answer admits it should be paid, and alleges that the directors would have paid it by taxation, had not the relators persistently demanded payment of the subscriptions, which they combined with the other claim, and endeavored to compel the directors to assess a tax for both. There is a claim also of $177 made by the committee for their own services and expenses; but it is no proper charge against the district. The committee was a voluntary body representing the voluntary action of the citizens and acting without compensation. Neither the law nor the action of the meetings recognise this as a debt against the township.

The question to be considered is whether the borrowed money is a legal demand against Winfield township, under the special bounty laws applicable to the county of Butler. As a matter of fact, it was lent to the committee by individuals on the condition of repayment by taxation, and the money was used to the amount of $1200, in paying bounties to volunteers enlisted and credited to the quota of the Winfield district. This condition, however, was only agreed upon between the lenders and the committee of the citizens, who gave their own notes as the security, taking an agreement of upwards of twenty leading men to indemnify them, or rather to share the liability. There was no agreement or understanding between the lenders and the school directors, that the money should be lent on condition of its being repaid by taxation. Another fact in the cause is, that though the condition to refund the money borrowed by means of taxation was agreed to at a

large public meeting of the citizens, a majority of the electors of the district did not petition the directors in favor of taxation. These facts raise the question, whether the 3d section of the Act of .14th April 1864 applies to the money thus borrowed, so as to bring it within the operation of the 2d section of the supplement of 22d August 1864, to compel repayment by mandamus.

The 1st section of the Act of April 14th 1864 is not mandatory, but merely empowers the directors to levy and assess taxes to pay a bounty to each volunteer enlisted and credited on the quota of the district.    This extends by force of its terms to the entire quota.    But in the 3d section, the directors are not only authorized but *required* to repay the money lent or advanced by individuals and paid to volunteers, on *condition* of repayment by taxation; but the repayment is to be *out of the moneys* levied and assessed under the *1st section*.    The only authority to lay taxes is that contained in the 1st section.    Thus the 1st and 3d sections are evidently repugnant to each other, unless the party assenting to the *condition* mentioned in the 3d be the school directors themselves.    If the parties to the condition of repayment be the lenders and committee only, the directors could not be required to make repayment out of taxes they had never consented or determined to lay.    But if they consented to the condition, that the money borrowed to pay bounties should be repaid by taxation, it would be virtually a determination on their part to levy and assess a tax under the 1st section, in order to perform the condition. The two sections would then be consistent with each other.    This brings us to consider the effect of the supplement of the 22d of August 1864.  Its 1st section changes the effect of the 1st section of the Act of 14th April 1864, by requiring the directors to levy and assess taxes to pay bounties at the petition of a majority of the qualified electors of the township, and if they refuse, the court is authorized to compel them by mandamus at the petition of ten citizens.    Thus, the legislature intended that when a majority of the electors of the district were favorable to a relief from the draft by means of taxation, the directors should not stand in the way.    The 2d section of the supplement then directs that if the directors refuse to levy a tax under the 3d section of the first act to repay money borrowed, the court shall have power to compel them to do so by mandamus.   In this instance, a majority of the electors is not required to petition the directors.    If, therefore, the 3d section of the first act be an unlimited authority conferred upon individuals or committees to contract loans to pay bounties, and to bind the district to repayment by taxation without the consent of the directors, the supplement superadds a power to enforce these outside liabilities by a writ of .mandamus. But it cannot be well supposed, that the legislature intended to confer such an unlimited power to bind the district, by the action

[Keasy *v.* Bricker.]

of individuals or even of committees, without the sanction of either a majority of the electors petitioning the directors, or of the directors representing the entire body of the citizens. But if the consent of the directors be required to the condition of repayment of such loans by taxation, both the acts would harmonize as well as the 1st and 3d sections of the first act with each other. Then the authority of the court to compel taxation by mandamus would be confined, as it clearly should be, to cases where the loans had been consented to by the directors, and the township preserved from inordinate taxation. It conforms also to the principle that the people should not be taxed except by their own consent, or that of officers truly representing them. Such was the interpretation given to the General Bounty Laws of March 1864, in the case of Donegal *v.* Oldweiler, 5 P. F. Smith 259.

For these reasons the judgment is reversed, and the writ of mandamus must be quashed.