## Minsinger *v.* Rau, Appellant.

*Constitutional law—Republican form of government—Taxation —Representation—Classification of school districts—Title of act— School law—Act of May 18, 1911, P. L. 309.*

1. Where an act has been the product of the deliberate thought of a commission of prominent citizens of the Commonwealth who have worked upon it for several years, and has been passed by two legislatures after prolonged consideration before final approval by the governor, the appellate court will not set it aside as unconstitutional unless the breaches of the fundamental law are so glaring that there is no escape.

2. The establishment, maintenance and support of a system of common schools having been imposed upon the legislative department of the government, it must employ agencies to accomplish that object and the manner of their selection is peculiarly within its discretion. Thus the legislature may provide that school directors shall be appointed by the judges, and that when so appointed they may levy taxes for the support of the common schools. When the legislature provides such a system of taxation to be enforced by its agents thus selected, it is a direct assertion and not a delegation of power.

3. The Act of May 18, 1911, P. L. 309, called the School Code does not offend against the provision of the Constitution of the United States which guarantees to every state a republican form of government, and against the principle that taxation and representation must go together.

4. The provision in Section 524 of the Act of May 18, 1911, P. L. 309, that the taxing power in districts of the first class is to

be exercised by nonelective boards is more apparent than real, inasmuch as the legislature itself has practically fixed the tax levy at a maximum of six mills, and simply leaves to its agents the privilege of collecting not less than five mills in any one year.

5. The provisions of the Act of May 18, 1911, P. L. 309, dividing the state into school districts according to population, and directing that in districts of the first class the directors or board of public education shall be appointed by the courts is not an improper or unconstitutional exercise of legislative power.

6. The courts in passing upon the validity of such an act as the School Code of May 18, 1911, P. L. 309, may determine that the act is constitutional in general without declaring minor provisions of the act unconstitutional, if the question of the constitutionality of such minor provisions is not raised directly in the case under consideration.

7. The Act of May 18, 1911, P. L. 309, does not violate Art. III, Sec. 3, of the Constitution of Pennsylvania as being defective in title; nor in the provisions requiring the judges of the Common Pleas to appoint the school directors in districts of the first class, does it violate Sec. 26, of Article V, of the Constitution, which ordains that all laws relating to courts shall be general and of uniform operation.

BROWN, MESTREZAT and STEWART, JJ., dissent.

Argued Jan. 8, 1912. Appeal, No. 12, Oct. T., 1912, by defendants, from decree of C. P. No. 3, Allegheny Co., Aug. T., 1911, No. 222, awarding injunction in case of Jacob Minsinger v. Leonard Rau, et al., Constituting the Board of School Directors of Mt. Washington Sub-School District. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

The case turned upon the constitutionality of the Act of May 18, 1911, P. L. 309.

The court overruled the demurrer filed to the bill and granted an injunction.

*Error assigned* was the decree of the court.

*Andrew G. Smith* and *Wm. H. Dodds*, with them *Oliver K. Eaton* and *Saul Schein*, for appellant.—It is

submitted that in substituting a judge-appointed school board for an elective body, the legislature has abolished "Republican Form of Government," and has "abridged the privileges or immunities of citizens of the United States." Furthermore, the method of taxation is not "due process of law": Yick Wo v. Hopkins, 118 U. S. 356 (6 Sup. Ct. Repr. 1064); Hagar v. Reclamation Dist. 108, 111 U. S. 701 (4 Sup. Ct. Repr. 663); Murray v. Hoboken Land & Imp. Co., 59 U. S. 272; Davidson v. New Orleans, 96 U. S. 97.

The School Code offends against provisions in the State Constitution relating to Classification, Special legislation, Title of the Act, and in several other respects: Com. v. Mathues, 210 Pa. 372; Beaver County Indexes, 6 Pa. C. C. R. 525.

The general assembly is created a department with the sovereign power of taxation, and there is no express provision authorizing a delegation of that power. Whoever asserts competency to delegates assumes the burden of showing constitutional authority clearly implied: Schultes v. Eberly, 82 Ala. 242 (2 So. Repr. 345).

Where the board authorized to levy the tax is appointed and not elected, it is not under the control of the people of its district and such taxation is without the people's consent, and therefore such a delegation of the power to tax is not within the reason of the rule permitting the legislature, by implication, the right to delegate the power to tax: State v. Ashbrook, 154 Mo. 375 (55 S. W. Repr. 627); O'Neil v. Ins. Co., 166 Pa. 72; Parks v. Wyandotte County Com'rs, 61 Fed. Repr. 436.

*W. B. Rodgers,* for appellee.—The establishment, maintenance and support of a system of common schools having been imposed upon the legislature it follows that it must employ agencies for the accomplishment of the object. The manner of the choice or appointment of the agents is peculiarly within the judg-

330        MINSINGER *v.* RAU, Appellant.

ment of the legislature because the school system is a charity of the State and large sums of the moneys of the State are annually required to be appropriated to the schools: Speight v. People, 87 Ill. 595; Wharton v. School Directors, 42 Pa. 358; Philadelphia v. Fox, 64 Pa. 169; Com. v. Moir, 199 Pa. 534; Perkins v. Slack, 86 Pa. 270.

There is no question as to the power of the legislature to require the judges of the Common Pleas to make the appointment: Commonwealth v. Collier, 213 Pa. 138; Sharpless v. Phila., 21 Pa. 147; Penna. R. R. Co. v. Pittsburgh, 104 Pa. 522; Durach's App., 62 Pa. 491; Jermyn v. Scranton, 186 Pa. 595.

So far as taxation is concerned and the powers of the directors, under the law, there is no difference between school districts and other municipal corporations. Both are agencies of the State to accomplish public purposes and created to do so. As respects both the power of taxation is granted by the legislature: Mellor v. Pittsburgh, 201 Pa. 397; Wharton v. School Directors, 42 Pa. 358.

It is too late to raise any question as to classification: Sugar Notch Borough, 192 Pa. 349.

OPINION BY MR. JUSTICE MOSCHZISKER, May 6, 1912:

The plaintiff averred in his bill, filed June 3, 1911, that he was a citizen and resident of Allegheny county; that the defendants were directors of Mt. Washington Sub-School District, Pittsburgh, in which he owned real estate and paid taxes; that these defendants (elected under the old law) were about to expend $6,500 in the purchase of a site for a new school building; that they were expressly prohibited from so doing by the recent School Code; and prayed for an injunction. The defendants demurred upon several grounds all of which attacked the constitutionality of the act in question. The demurrer was overruled and the injunction granted; this is assigned for error.

The Act of May 18, 1911, P. L. 309, called the School Code, was the product of the deliberate thought of a commission of prominent citizens of the Commonwealth who worked upon the statute for several years; after prolonged consideration it passed two legislatures before final approval by the governor, and we are now asked to set it aside as unconstitutional. This we should not and cannot do unless the alleged breaches of the fundamental law are so glaring that there is no escape: Gottschall v. Campbell, 234 Pa. 347, and cases there cited. The constitution requires the legislature to provide and support a thorough and efficient system of schools for the education of the children of the Commonwealth, and this is what was undertaken by the code. The act divides the State into four classes of school districts and provides that in districts of the first class the directors or board of public education shall be appointed by the courts. The appellants broadly contend that this offends against the Constitution of the United States, which guarantees to every State a republican form of government, and against the principle that taxation and representation must go together, and more particularly they attack the attempted classification as illegal.

The establishment, maintenance and support of a system of common schools having been imposed upon the legislative department of the government, it must employ agencies to accomplish that object, and the manner of their selection is peculiarly within its discretion. The school district is but an agency of the Commonwealth, and there is no inherent right in the electors of any particular locality to vote for directors; subject to constitutional restrictions the State may provide any method for the selection of its agents it may see fit, and the methods employed need not be alike in all instances. The Commonwealth has the power to designate its agencies in connection with school taxes, and the school districts are the agents in this respect.

When the legislature provided a system of taxation for the maintenance of public schools to be enforced by its selected agents, it was a direct assertion and not a delegation of power. "The legislature may provide agencies through whom to exercise the power of taxation, ...... Accordingly, from the beginning of our government, the legislature have divided the State into counties, townships, school districts, boroughs and cities, and have provided for the appointment or election of certain tax officers ...... This has been not so much a delegation of the power of taxation ...... as an exercise of it through and by means of chosen agencies ...... The constitution and habits of the body (the general assembly) unfit them for applying rules which it is their province to prescribe. They are obliged to act through chosen agencies when providing for the revenues of the State. State taxes ......, common schools and all state objects, have to be entrusted to agents, though the power that controls them resides in the legislature"; Sharpless v. Philadelphia, 21 Pa. 147, 181; also see Com. v. Moir, 199 Pa. 534, 542; Phila. v. Fox, 64 Pa. 169, 183; Erie School District v. Fuess, 98 Pa. 600; Ford v. Kendall Borough School District, 121 Pa. 543; Knisely v. Cotterel, 196 Pa. 614. The objection that under the School Code the taxing power in districts of the first class is to be exercised by nonelective boards, is more apparent than real. Section 524 of the act provides: "The total annual school tax levy, made in any one year by any school district of the first class, shall not be less than five nor more than six mills on the dollar of the total assessment of all property assessed and certified for taxation therein." Practically the legislature itself has fixed the tax levy at a maximum of six mills and simply leaves to its agents the privilege of collecting not less than five mills in any one year; this cannot properly be objected to as unrepublican or as an unlawful delegation of legislative power to an unrepresentative body.

The power to classify school districts is not an open question in Pennsylvania (Sugar Notch Boro., 192 Pa. 349; Com. v. Gilligan, 195 Pa. 504; Com. v. Guthrie, 203 Pa. 209), and no court should set up its idea of the necessity for or the reasonableness of a scheme of classification against the will of the people expressed through the legislature, unless it is clear that the latter has gone beyond constitutional limits in defining the classification objected to. The Act of 1911 establishes school districts based upon population, and this is the method of classification long recognized in the law of our State. Such classification has been supported when applied to cities, counties and townships, and we can conceive of no reason why it should not be sustained when applied to school districts. In Sugar Notch Boro., supra p. 357, we said, "There is no constitutional objection to the classification of school districts any more than of cities. Both are included in the same clause of the constitution prohibitory of local and special legislation, and there is no argument against classification of one that is not equally forcible against the other. ...... Classification may become as necessary for school districts as for cities. The needs and capabilities of school districts may differ as substantially, if not as widely as those of cities. They differ in the number and authority of the school officers, the extent and mode of assessing and collecting school taxes, etc. It would be a most unfortunate clog on the improvement of our school system if Philadelphia, Pittsburgh, Allegheny and other cities could not have their high schools....or even their kindergartens, without the necessity of imposing the expense of a similar establishment on every borough and sparsely populated township in the State"; and in Com. v. Gilligan, supra p. 511, "Recognizing that a large population compressed into a small territory may have the same necessity for a somewhat differently constituted board of government for the business affairs of its schools, that it has for its strictly

municipal affairs, it (the act under consideration) provides a special system for districts so specially situated. This is the legitimate office of classification, and therefore is not local or special within the prohibition of the constitution. ...... Whether the variations as to the boards of direction or control are wise is a legislative not a judicial question." Also see Com. v. Guthrie, 203 Pa. 209, and Erie School District v. Smith, 195 Pa. 515. Since in enacting the code the legislature founded the distinction in school districts upon population, the standard repeatedly approved by this court, it would be an unwarranted exercise of power to set aside the classification or declare the act unconstitutional by reason thereof. The cases already cited show that we have been most liberal in our view concerning the right to classify school districts, and this certainly is not an occasion when we should depart from that attitude. As the statute is drawn, to set aside the classification would destroy the structure of the act and require us to declare it void as a whole. We must assume that the distinction in districts was deemed essential to the school system intended to be developed by the code, and there is no evidence contained in the act which justifies a judicial finding that the classification was adopted for other than legitimate purposes; every classification, ex necessitate, recognizes the requirement for differences in legislation; hence, none can be condemned by merely pointing to such differences. It may be that some of the details of the present act will prove invalid, for it would be difficult to draw such an elaborate piece of legislation and avoid this possibility, but none has been called to our attention the striking down of which would disturb the scheme of classification or nullify the statute. In Stevenson v. Henderson, 234 Pa. 478, the only case thus far decided under the School Code, we sustained the validity of a levy of the occupation tax therein provided for, against the contention that it was invalid because of undue classification.

We conclude that the objection to the classification is not well taken.

In the case at bar the only matters directly involved are the powers of and the limitations upon school authorities in districts of the first class to raise money and contract for the erection of school houses, and we shall not undertake to pass upon the constitutionality or construe all the various sections of this statute; that can be done from time to time as cases arise thereunder involving the validity of its different provisions. Here we are concerned with the general question of the validity of the code and with the particular provisions that relate to the facts of the case at bar, and it is not necessary nor would it be wise to determine unrelated questions. We have given heed not only to the principal reasons urged by the appellants against the act, but so far as they might affect its general validity we have considered all the minor grounds of attack; although Section 2819, relating to the kind of stone which shall be used in the erection of school houses in districts of the first class, etc., may well be condemned as local legislation because it covers matters in no conceivable way peculiar to such districts as distinguished from other districts, and while it with other sections and provisions may be justifiably open to criticism on this and other grounds, we are not called upon to decide any of these questions at the present time. In the words of our Brother POTTER, in Gottschall v. Campbell, supra, "This feature, together with several other matters of detail to which reference has been made in the argument, is not essentially involved in the main purpose of the statute. Any such questions are of minor importance, and if they arise in the future course of business in the court, they can be more fully presented and argued in detail, and the precise questions involved can be more fully considered than at the present time." Speight v. People, 87 Ill. 595, is strong in support of the views here taken, both as to classification and taxation;

but the citation of decisions from the courts of other states where the constitutions and conditions are different, is of little or no avail in a case like this.

In addition to the grounds of attack already referred to, the appellants raise the usual objection of insufficiency of title. A title need not be an index; it must not be misleading, but if it fairly gives notice of the subject and substance of an act, it is sufficient. A short general comprehensive title is more desirable than a long one which attempts to point out all the details of a statute. If there are provisions not covered by the title, they do not affect the validity of the act as a whole unless they are vital in character and it is apparent that without them the lawmakers would not have enacted the legislation; we are not convinced that any of the matters called to our attention by the appellant can be thus classed. The code is entitled, "An act to establish a public school system, etc."; this is a most comprehensive expression, not restricted to or conveying the idea of a mere codification of existing laws, and thereunder the general assembly has, in accordance with the constitutional mandate, provided for the maintenance and support of a thorough and efficient system of public schools.

The appellants also contend that Section 202 of the act, requiring the judges of the Common Pleas to appoint the school directors in districts of the first class, is a violation of Section 26, of Article V, of the Constitution, which ordains that all laws relating to courts shall be general and of uniform operation. Time out of mind nonjudicial administrative duties have been put upon the judges of the Court of Common Pleas, particularly in the appointment of bodies to be used as public agencies, and the power of the legislature to do this was sustained in Com. v. Collier, 213 Pa. 138. We have never considered such legislation to be within the constitutional restrictions relied upon by the appellant; as said by our Brother BROWN, in Com. v. Collier, supra,

"It is to be presumed that the people, with the knowledge that for years before they adopted the present constitution judges of the Common Pleas had been directed by acts of assembly to appoint mercantile appraisers, boards of revision of taxes, and other officers, ...... left the judges ...... to continue to appoint when directed to do so by the legislature." Also see Knisely v. Cotterall, supra. For half a century or longer the judges of Philadelphia have appointed the members of the board of education and the board of revision of taxes; and in Blankenburg v. Black, 200 Pa. 629, an act to make the latter board elective was declared unconstitutional.

We have attempted to touch upon and dispose of all the points urged by the appellants which are directly involved in the case or which go to the validity of the code as a whole; but, as already indicated, we are not persuaded that any of them is of a nature which requires us to set aside the statute as unconstitutional legislation. Under the provisions of the Act of 1911 (Sec. 209), the defendants were to serve in office until the organization of their successors in November, 1911 (Sec. 202), but they are expressly forbidden to contract for any new property (Sec. 2811), that power being reserved to the directors to be selected in accordance with the code; therefore, the learned court below committed no error in granting the injunction prayed for.

The assignments are overruled and the decree of the court below is affirmed at the cost of the appellants.

DISSENTING OPINION BY MR. JUSTICE BROWN, May 6, 1912:

Though the Constitution has imposed upon the legislature the duty of providing for the maintenance and support of a thorough and efficient system of public schools, and this duty must be discharged, the legisla-

ture may not, in discharging it, disregard constitutional prohibitions. What the Constitution forbids the legislature to do, it dare not do, even in providing for the maintenance and support of a thorough and efficient system of public schools, and the "Commission of prominent citizens of the Commonwealth" who framed the School Code of 1911 ought to have understood this and been able to draft an act free from flagrant disregard of the supreme law of the State.

The demurrer to the bill filed in the court below sets forth a number of reasons why the Act of 1911 should be declared unconstitutional, but a consideration of only two of them will suffice to show that the demurrer ought to have been sustained. The act divides the school districts of the State into four classes, as follows: Each school district having a population of five hundred thousand (500,000), or more, shall be a school district of the first class; each school district having a population of thirty thousand (30,000), or more, but of less than five hundred thousand (500,000) shall be a school district of the second class; each school district having a population of five thousand (5,000), or more, but of less than thirty thousand (30,000), shall be a school district of the third class; each school district having a population of less than five thousand (5,000) shall be a school district of the fourth class.

Classification of school districts is not forbidden by the Constitution: Sugar Notch Borough, 192 Pa. 349; Com. v. Gilligan, 195 Pa. 504; Com. v. Guthrie, 202 Pa. 209; and if the complaint of the appellants were only as to the classification of the school districts of the State, they could not be heard. But heed surely ought to be given to their contention that, under the guise of a general classification of the districts, the Act of 1911 produces, and was passed for the undoubted purpose of producing, local and special results. It constitutes the cities of Philadelphia and Pittsburgh districts of the first class; it makes the directors in those districts ap-

pointive; it provides that districts of the second, third and fourth classes shall collect an occupation tax on all male citizens over twenty-one years of age of at least $1.00; it provides that in districts of the first class certain workmen only may be employed on school buildings, and attempts to regulate the wages which shall be paid to them; it prohibits directors in districts of the first class from using cut stone in school buildings unless the same shall be prepared in the district; and it gives to the electors outside the districts of the first class the right to elect school directors, but denies this franchise to the citizens of the school districts of the first class. The legislature has, in effect, said to the people of Philadelphia and Pittsburgh that while citizens in other districts of the state may be trusted to manage their school affairs, they cannot be so trusted. It is difficult to conceive of legislation more local and special in its character, making this uncalled-for distinction between the citizens of the two leading municipalities of the State and those of all other localities. "It is not only local and special, but odious in its discrimination": Davis v. Clark, 106 Pa. 377. In McCarthy v. Commonwealth, 110 Pa. 243, this court had before it an act of assembly which directed that the fees belonging to county officers in counties the population of which exceeded one hundred thousand, but was less than one hundred and fifty thousand, should be turned over to the county treasurer, and the officers compensated by salaries, and, in holding that the act offended against the Constitution, we said, through Mr. Justice GORDON, "But by what process of reasoning is this legislation, which has selected for its operation three or four counties from all those composing the commonwealth, to be justified? Is the justification to be found in the well recognized legislative power of classification. We think not. It is admitted that classification, even where not specially recognized by nature, custom, the laws of trade, or the Constitution, must, in certain

cases, be adopted ex necessitate, as in the case of cities, under the Act of May 23, 1874, P. L. 230 ...... If, indeed, such legislation were to be recognized as legitimate, vain would be the constitutional prohibition of local or special laws. But little ingenuity in the way of so called classification would be necessary in order to isolate every single county, borough, ward, township and school district in the State, and provide for each its own local code."

While school districts may be constitutionally classified—and their classification must also of necessity involve different conditions in the different classes—there cannot be a classification which is manifestly intended to have as its real purpose special legislation for certain districts. Classification based upon actual necessity is one thing; but when it is apparent that, under the plea of necessity, the ulterior object of the legislature is special legislation for certain districts, the attempted classification is but a mere subterfuge to evade the Constitution; and courts will look at the substance and not the sum of legislation in determining whether a statute is local or special, repugnant to the fundamental law, though disguised as a general act: Sample v. Pittsburgh, 212 Pa. 533. If local results either are or may be produced by an act of assembly, it offends against the Constitution and is void: Scranton School District's Appeal, 113 Pa. 176. "The underlying principle of all the cases is that classification, with the view of legislating for either class separately, is essentially unconstitutional, unless a necessity therefor exists,—a necessity springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others": Ayars' Appeal, 122 Pa. 266. In the light of these unavoidable utterances by this court, and of many more like them, I confess my utter inability to follow any process of reasoning that attempts to sus-

tain the Act of 1911. What was said by Mr. Justice PAXSON in Scowden's Appeal, 96 Pa. 422, may well be repeated here: "It requires but a glance at the act to see that it is an attempt to evade the Constitution. It is special legislation under the attempted disguise of a general law. Of all forms of special legislation this is the most vicious." When the act was passed, Philadelphia and Pittsburgh were the only two cities which could have become, under it, school districts of the first class, and how can it possibly be doubted that the legislature intended to legislate specially for them when it provided, inter alia, that the people in those two cities should not vote for school directors; that the directors in those districts should be limited, in building and furnishing schoolhouses, to the employment of certain kinds of labor at certain rates, which they had no voice in establishing; that no cut stone could be used in the erection of a school building in a district of the first class, unless prepared in a stone yard in the district; that in all other parts of the state voters could choose their school directors; that the directors in other districts could build schoolhouses out of any material they might see fit to use, without regard to where it came from, and that the male citizens in all classes of districts except the first should be compelled to pay at least $1.00 of an occupation tax, from which the male citizens of the first class districts were exempt. No conceivable ground of necessity justified these startling discriminations, which must be read as local or special legislation, intended as such, and, therefore, coming within the clear prohibition of the constitution, unless there is to be expunged from it that clause which declares that the general assembly shall not pass any local or special law "regulating the management of public schools, the building or repairing of schoolhouses, and the raising of money for such purposes." The majority of the court concede that some of the provisions of the Act of 1911, relating to school districts of the first

class, "may well be condemned as local legislation,"
because they cover matters "in no conceivable way
peculiar to such districts as distinguished from other
districts." What is there so peculiar to the cities of
Philadelphia and Pittsburgh that their people ought
not to have the same right that is given to the people
in all other parts of the state—to elect their own school
directors?

The people of the State have vested the taxing power
absolutely in the legislature, and it cannot delegate
that power wholly or in part to either of the other de-
partments of government, to any individual or to any
board or commission. *Delegatus non potest delegare.*
An exception to this rule—more apparent than real,
however—is the power which the legislature may give
to municipal authorities to assess and collect taxes for
local purposes: Durach's Appeal, 62 Pa. 491; Pennsyl-
vania Railroad Company v. Pittsburgh, 104 Pa. 522.
"There is an exception to the rule that the legislature
cannot delegate the power of taxation, which has al-
ready been referred to. It is an exception as old as the
rule itself; has its origin in the same causes; and is
justified by the same governmental reasons. The local
municipalities are, viewed in one aspect, the agents of the
state for the purposes of local government; viewed in
another aspect they are the local legislature, directly
representative of and responsible to the people of their
respective territories. The principle that taxation can
only be by consent of the people to be taxed, acting
through their representatives authorizes taxation by
local authorities for local purposes, and discountenances
interference in such matters by the representatives of
other portions of the State. Long settled usage con-
firms this reasoning; and it is a firmly established doc-
trine that the power of local taxation for local purposes
may be exercised by municipalities. In authorizing
the local governmental bodies to exercise the power,
the legislature may be regarded in theory, not really

as delegating the power (for it is a power which belongs to the locality rather than to the government at large) but as laying down a general rule for the exercise, by the municipalities, of the power which belongs to them": Gray, Limitations of Taxing Power, 281. "There is, nevertheless, one clearly defined exception to the rule, that the legislature shall not delegate any portion of its authority. The exception, however, is strictly in harmony with the general features of our political system, and it rests upon an implication of popular assent, which is conclusive. The exception relates to the case of municipal corporations": Cooley on Tax., (2d Ed.), 63. Such corporations are considered parts of the machinery of the government, governmental agencies, necessary and most effective to manage the local affairs of the people residing in the designated locality, and, by custom immemorial, a portion of the political powers of the State has been delegated to them, to be exercised in local administration. But school directors are not municipal officers. They are not invested with any of the municipal powers, nor are they charged with the performance of municipal functions: Chalfant v. Edwards, 173 Pa. 246; Dillon Municipal Corporation, Sec. 25; Heller v. Stremmel, 52 Mo. 309.

While the legislature may authorize municipal authorities to levy taxes for local purposes, because municipalities are but the agents of the State, and their authorities are elected directly by the people from whom the taxes are to be collected, the Act of 1911 goes far beyond this. In school districts of the first class school directors are not to be elected by the people. They are not even to be appointed by the legislature, but are to be appointees of the judges of the courts of common pleas, who, strictly speaking, are not the representatives of the people. They represent only the law, chosen for that purpose at long intervals. In these appointees of an intervening branch of the State govern-

ment the legislature has undertaken to vest the power of taxation. The people who are to be taxed will have no voice in the selection of those who are to tax them. The scheme is one of bald taxation without representation and strikes at the very root of a republican form of government, for taxes are a grant of the people, and the grant must be made by their immediate representatives. The people are not to be taxed except by their own consent or that of officers truly representing them: Keasy v. Bricker, 60 Pa. 9. "From the very dawn of our liberties the principle most unquestionable of all has been this: that the people shall vote the taxes they are to pay, or be permitted to choose representatives for the purpose." COOLEY, J., in Detroit Board of Park Commissioners v. Detroit, 28 Mich. 228. "Self taxation, or taxation by officers chosen by or answerable to those directly interested in the district to be taxed, is inseparable from that protection of the right of property that is either expressly or impliedly guaranteed by all written constitutions, under our system of government. Of all the powers of government the one most liable to abuse is the power of taxation. If placed in hands irresponsible to the people of the district to be taxed, its abuse is a mere question of time": Parks v. Wyandotte County Board of Com's, 61 Fed. Repr. 436.

In Schultes v. Eberly, 82 Ala. 242, the question before the court was the constitutionality of an act of the legislature investing trustees appointed by the act, eo nomine, and their successors, to be appointed by the state superintendent of education, with the power to levy taxes for school purposes, and, in holding that the act could not be upheld, it was said: "It is useless to waste discussion to show that the 'Cullman school district' is not a municipal corporation. Speaking of such districts as corporate bodies, Judge DILLON says: 'Considered with respect to the limited number of their corporate powers, the bodies above named rank low down in the scale or grade of corporate existence; and

hence have been frequently termed quasi corporations. This designation distinguishes them, on the one hand, from corporations aggregate, and on the other, from municipal corporations proper, such as cities or towns acting under charters, or incorporating statutes, and which are invested with more functions and a larger amount of corporate life.' 1 Dillon Munc. Corp., Sec. 25; Heller v. Stremmel, 52 Mo. 309. The people have no voice in the selection of the trustees, nor in the management and control of the public schools, the building of school houses, or any of the local affairs of the district. The first trustees are appointed *eo nomine,* in the act, and their successors by the state superintendent of education. They are clothed with all the executive powers pertaining to the purposes of the corporation, and are vested with the highest attribute of legislative power, to levy and collect a tax. Exclusive of the trustees, the corporation has no function; it does not possess what has been said to be the distinguishing feature of a municipal corporation proper, the power of local government in a corporate capacity; and the cardinal principle of self-taxation is ignored. It has no features in harmony with our system of republican government. However earnest may be the interest in popular education, and however great may be the desire to contribute to its spread and advancement, we cannot afford, in order to accomplish an end so benevolent and beneficial to break down the constitutional safeguards of property, which the sovereign people have ordained for their protection. If the authority of the legislature to delegate the power to tax to the trustees of this district is upheld, the constitutional limitations upon the power of the general assembly, counties and municipal corporations, are vain and delusive. Similar corporations, to an indefinite number, may be created, covering the entire territorial area and population of the state—subordinate agencies despotic *sub modo,* being governed by trustees of legislative appointment with power to impose

a tax on the people, to whom they are under no official accountability, who have clothed them with no authority, and who are appointed without the consent of those who are to pay the tax, directly or indirectly expressed. If this can be done for educational purposes, it may be done for any other public purpose. Such legislation, first induced by a patriotic desire to secure the great desideratum of popular education, calculated to lull vigilance, may become misgovernment, subversive of the fundamental and distinguishing principles of republican institutions." In the comparatively recent case of Vallelly, et al., v. Board of Park Commissioners (Supreme Court North Dakota), 111 N. W. Repr. 615, an act of the legislature authorized a board appointed by the city council, without the consent of the people, to levy general taxes. In declaring it unconstitutional, the court said in part: "It has become a well-recognized principle of constitutional law that local boards and councils elected by the people are bodies to which the power to tax may be delegated. This is so upon the principle that the legislative power to levy taxes rests with the people; and, so long as the people have a voice in the selection of bodies to which the power to tax is delegated, the constitutional restriction is not violated. The power of the legislature to delegate the authority to levy taxes is generally held to be limited to boards or councils elected by the people, and is not sanctioned when delegated to those appointed, when the appointment has not been assented to by a vote of the people. This limitation is recognized under the principle that all powers of taxation are reposed in the people, and, unless the people assent by vote to the appointment or election of the taxing authorities, the law authorizing such powers of taxation to those not thus assented to is repugnant to the Constitution, and not to be upheld. The power to levy taxes is one of the most important of legislative functions. If abused, it may amount to a practical confiscation of property. A power so far-

reaching should not be reposed in any one not directly responsible to the people. If appointed by the people, and abuses follow, a remedy by removal is in their hands; otherwise, redress is so remote as to be without practical results. Regardless of Section 130, of the Constitution, the delegation of the taxing power to a person or board without some assent by the people could not be sustained. The power to tax is a legislative power and cannot be delegated to boards or commissions whose appointment has not been in some way assented to by the people."

It is no answer to the contention that the legislature has delegated the power of taxation to school directors in school districts of the first class, that it has fixed the limit of the tax to be levied and collected in those districts. It has not, as it might have, fixed definitely the rate of taxation in those districts but has delegated to boards to be appointed by the judiciary an absolute discretion and power to tax within certain limits, and the people who are to be taxed by such boards have no voice as to what the rate of taxation shall be. While a minimum below which and a maximum above which these appointed boards cannot go have been designated in the act, the authority to fix the rate of tax between the designated limits has been delegated to the boards and can be exercised according to their arbitrary discretion. Until they determine the rate of taxation to be levied within the districts for which they are appointed, no one in those communities can determine from the Act of 1911 what the tax is or will be. Until the boards act, the rate of tax is an unknown quantity. Indeed, until they do act, there is no tax provided, for an undetermined tax is no tax in law. The determination of the amount or rate of a tax to be imposed is as essential in the exercise of taxing power as the designation of the property to be taxed, or the time for its collection or enforcement: State v. Ashbrook, 154 Mo. 375. All of the foregoing authorities, and many more that might

be cited, announcing a fundamental principle of a republican form of government, have been ignored in sustaining the Act of 1911; and this is to be deplored.

The court below should have declared the Act of May 18, 1911, to be local or special legislation, so far as it relates to school districts of the first class, and an unauthorized attempt on the part of the legislature to delegate its power of taxation. I would, therefore, reverse the decree and dismiss the bill at appellee's costs.

MESTREZAT and STEWART, JJ., concur in this dissent.