# Stegmaier, Appellant, *v.* Jones.

| | |
|---|---|
| 203 | 47 |
| 203 | ³598 |
| 203 | 47 |
| 210 | ² 38 |
| e210 | ³108 |
| e210 | ³109 |
| 210 | ³590 |
| 203 | 47 |
| 29 SC | ³124 |
| 203 | 47 |
| 32 SC | ³225 |
| 32 SC | 502 |
| 203 | 47 |
| 35 SC | ²415 |
| 35 SC | ²582 |
| 35 SC | ²585 |
| 203 | 47 |
| 39SC | 458 |

*Mandamus—County bridges—Parties—Attorney general—District attorney.*

The duty of the county commissioners under the Act of May 5, 1899, P. L. 231, relating to the purchase of county bridges, is a public one, and by the 4th section of the mandamus Act of June 8, 1893, P. L. 345, can only be enforced at the suit of the attorney general or the district attorney of the proper county, or on the general principles of the common law, by a private citizen having a specific and independent legal right or interest in himself, different from that of the public at large, and without other remedy.

*Constitutional law—Title of statute—County bridges—Act of May 5, 1899, P. L. 231.*

Uniformity is not a constitutional requirement of legislation under section 7 of article 3, but only a judicial test among others, of its character as general or local and special.

The Act of May 5, 1899, P. L. 231, entitled, " An act authorizing counties of the commonwealth of Pennsylvania to purchase, maintain, use and condemn bridges erected and in use over rivers and streams separating or dividing any part or district of such counties," is unconstitutional, not because it is local or special legislation, but because its title fails to disclose that important powers and duties were taken away from constitutional officers, such as county commissioners, and vested in the grand jury, a shifting and uncertain body, not usually if ever, exercising such powers, not elected by the voters but drawn by lot, and not requiring even the supervision of the court.

Argued April 17, 1902.   Appeal, No. 108, Jan. T., 1902, by plaintiff, from order of C. P. Luzerne County, Dec. T., 1902, No. 411, dismissing petition for mandamus in case of George J. Stegmaier v. John M. Jones, A. D. Hay and Patrick Finn, Commissioners of Luzerne County.   Before McCollum, C. J., Mitchell, Dean, Brown and Mestrezat, JJ.   Affirmed.

Petition for mandamus.

Wheaton, J., stated the facts to be as follows:

The inception of this proceeding was a petition alleged to have been in proper form as prescribed by the 7th section of the Act of May 5, 1899, P. L. 233, presented to the defendants prior to May 3, 1901.

The prayer of the petitioners having been refused by the county commissioners, the said petition, and the action of the said commissioners indorsed thereon, was presented to the grand jury June 1, 1901, and the same day the grand jury took action and approved the entering upon and taking of the bridge described in the petition, by the county commissioners, under the act of May 5, 1899.

No steps having been taken by the county commissioners to enter upon and take said bridge, George J. Stegmaier, whose name does not appear as a signer of the original petition, and whose beneficial interest in the matter in dispute is not stated in the application for a mandamus, except as an attorney in fact for a specific purpose, presented his petition to the court November 11, 1901, praying for an alternative mandamus against the county commissioners, which was granted the same day and made returnable November 25, 1901.

November 25, 1901, the commissioners filed an answer to the alternative mandamus, and the hearing having been continued, November 27, 1901, the petitioners were allowed to amend their petition by adding thereto an allegation of the assets of the county over and above its liabilities for the fiscal year ending January 7, 1901, and an allegation of the amount of the total assessed valuation of the real and personal estate of said county at that date.

November 29, 1901, the commissioners filed an additional answer to the amended petition.

November 27, 1901, certain taxpayers of the county were, upon application to the court, permitted to come in and defend, and upon the same day, said intervening taxpayers filed a separate answer.

December 16, 1901, the plaintiff filed special replications to the answers of the commissioners and taxpayers, ignoring the rule of the Supreme Court that no special replication to any answer shall be filed.

The court refused the writ partly on the ground that the relator had no standing, and partly on the ground that the act of May 5, 1899, was unconstitutional, as local or special legislation.

*Error assigned* was the order of the court.

*William S. McLean*, and *Rush Trescott*, with them *William R. Gibbons*, for appellant.—The act of assembly in question is not one relating to ferries or bridges and is not special or local legislation: West River Bridge Co. v. Dix, 6 Howard, 535; Enfield Toll Bridge Co. v. Hartford & New Haven R. R. Co., 17 Conn. 454.

The legislature has taken the power in this case out of the hands of the usual public official, and placed it in the hands of the petitioner.    This is unquestionably a competent exercise of legislative authority.

*J. B. Woodward*, of *Woodward, Darling & Woodward*, with him *G. J. Clark*, county solicitor, and *Charles E. Terry*, for appellee.—An enactment by which the legislature attempts to take from the board of supervisors of a county any part of the ordinary general powers of county government vested in all boards of supervisors by the general statutes of the state, and to confer such powers upon some other officer or body elected or appointed for the purpose is unconstitutional and void: Brewer v. Boston, etc., R. R. Co., 113 Mass. 52; State ex rel. Walsh v. Dousman, 28 Wis. 542; State v. Noble, 118 Ind. 350.

The 7th section of the act of May 5, 1899, is in violation of article 3, section 7, of the constitution, and also of all the traditions of the English and American law as to the function and powers of the grand jury.    In other words, it is not only unconstitutional, but revolutionary.    "A statute creating a new jurisdiction must be construed strictly:" East Union Twp. v. Ryan, 86 Pa. 459; Cooley on Cons. Lim. (3d ed.) * 528.

The act is defective in title.

A mandamus lies only where there is a clear, legal right in the relator and a corresponding duty in the defendant: James v. Commissioners of Bucks County, 13 Pa. 72; Borough of Easton v. Lehigh Water Co., 97 Pa. 554.

OPINION BY MR. JUSTICE MITCHELL, May 19, 1902:

This is a petition by a private citizen to compel the purchase by the county commissioners of certain bridges under the Act of May 5, 1899, P. L. 231.    The duty of the commissioners under that act is a public one, and by the 4th section

of the mandamus Act of June 8, 1893, P. L. 345, can only be enforced at the suit of the attorney general or the district attorney of the proper county, or on the general principles of the common law, by a private citizen having a specific and independent legal right or interest in himself, different from that of the public at large, and without other remedy : Heffner v. Com., 28 Pa. 108 ; Com. ex rel. v. Mitchell, 82 Pa. 343. The learned judge below found that no such special interest in the relator had been shown. He would therefore have been justified in dismissing the petition without more.

But the judge went further and refused the writ on the ground that the act of 1899 is unconstitutional. We should not be able to concur in all the reasons assigned, but the conclusion is correct. There is no constitutional requirement of uniformity as to matters included in section 7 of article 3. That section is a prohibition against local or special laws upon certain subjects, including bridges not crossing streams which are boundaries between this and any other state. The constitutional requirement therefore is that such laws shall be general, not local or special and uniformity of result is only one of the judicial tests applied to laws for the determination of their character as to generality. A law may by classification or otherwise produce some diversity of result, and yet be general, for where the classification is based on genuine distinctions, its expediency is for legislative determination.

There is, however, a serious and insuperable objection to the act, in that it is a departure, almost revolutionary, from the settled policy of the state on the administration of the affairs of counties, and yet not only is such purpose not clearly expressed but no indication of it is given in the title.

County affairs, particularly their financial affairs, have been administered by county commissioners from the earliest days of the province (see Acts of February 28, 1710–1711, 2 Stat. at Large, 369, 373) ; the duties and powers of the commissioners have not been materially changed for more than a century (see Act of April 11, 1799, 3 Smith's Laws, 393), and they are now constitutional officers. The title of the present act is " An act authorizing counties of the commonwealth of Pennsylvania, to purchase, maintain, use and condemn bridges, erected and in use over rivers and streams separating or dividing any part

or district of such counties." From this title taxpayers as well as the officers affected might well suppose that the authority intended to be granted was to be exercised by the usual, natural, duly constituted officers for that purpose. But passing over the conflict between sections 6 and 7, as to the duties of the county commissioners and the grand jury and conceding that they may be reconciled, the body of the act puts the final authority in the grand jury. The most important feature in the act, therefore, the power to impose on the county the very serious burden of debt which would be involved for example in this petition, is thus without any notice in the title transferred to a shifting and uncertain body, not usually if ever exercising such powers, not elected by the voters but drawn by lot, and not requiring even the supervision of the court, yet vested by the act with authority to overrule without appeal the constitutional officers chosen by the electors to administer this class of their affairs. How far the legislature may constitutionally change, modify or take away the powers and duties of constitutional officers such as county commissioners, we need not now consider. But if such a change in the long established policy, with such important and burdensome results is to be made, it should be done openly, directly, expressly and in such terms as to give notice to all the interests involved. The title of an act need not be an index of its contents, and though the title may be general it will cover all details and collateral matters naturally and properly incident to the subject named, but to omit, as the act under consideration does, all indication of its most important feature and effect is to fail entirely in the constitutional requirement that the subject shall be clearly expressed in the title.

Judgment affirmed.