IN THE MATTER OF THE PETITION FOR THE LAYING OUT OF CYPRESS FARMS DITCH.

(*August* 9, 1935.)

LAYTON, C. J., and HARRINGTON, J., sitting.

*James M. Tunnell* for petitioners.

*Robert G. Houston* for exceptants.

Superior Court for Sussex County, April Term, 1935.

LAYTON, C. J., delivering the opinion of the Court:

The question presented is one of importance. Courts ought not to nullify an act of legislature except in clear cases and upon weighty considerations. Every legislative enactment is presumed to be constitutional, and if there is doubt, the will of the legislature should be sus-

tained. *State v. Wickenhoefer*, 6 *Penn.* (22 *Del.*) 120, 64 *A.* 273; *Monaghan v. Lewis*, 5 *Penn.* (21 *Del.*) 218, 59 *A.* 948, 10 *Ann. Cas.* 1048; *State v. Grier*, 4 *Boyce* (27 *Del.*) 322, 88 *A.* 579.

██ ██ At the same time, the constitutional provision in question has a meaning and purpose which may not be disregarded. The provision is mandatory, *Wilmington Trust Co: v. Highfield*, 4 *W. W. Harr.* (34 *Del.*) 394, 153 *A.* 864, and, it is the duty of the Courts to maintain the supremacy of the Constitution.

The provision in question embraces two distinct matters, 26 *A. & E.* 575. See *State v. Grier, supra,* 4 *Boyce* (27 *Del.*) 322, at page 334, 88 *A.* 579. The first is, that no bill shall embrace more than one subject. With this we are not concerned. The second is, that the subject shall be expressed in the title; and the question to be decided is whether the subject of the act is expressed in the title, *"An Act with reference to Ditches and Drains in Sussex County."*

Inclusion of the provision in the Constitution was based upon sound public policy, and like provisions are found in most of the State Constitutions.

██ Our Courts have quoted with approval the observations of Judge Cooley, *Const. Lim.* (8th Ed.) Vol. 1, p. 296, that the purpose of the provision is, "First, to prevent hodgepodge or log-rolling legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the title give no intimation * * *; third, to fairly apprise the people through publication of legislative proceedings as is usually made of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon by petition or otherwise, if they shall so desire." *Equitable Guarantee*

& *Trust Co. v. Donahoe,* 3 *Penn.* 191, 49 *A.* 372, 373; *Wilmington. Trust Co. v. Highfield, supra.* And our own Courts also have said that the principal object of the provision is that the title of an act, when published, shall be sufficiently comprehensive to give to the people, as well as the members of the legislature, fair and reasonable notice of the subject matter of the legislation proposed. *State v. Ferschke,* 2 *Boyce* (25 *Del.*) 477, 81 *A.* 401; and to prevent deception by provisions of which the title gives no intimation, *Monaghan v. Lewis, supra.*

The title of an act need not go into details, nor furnish a synopsis or index of the act, *State v. Grier, supra;* but it must, at least, give a reasonable intimation of the subject dealt with, and the Courts do not hesitate to declare void an act whose title is misleading in that it does not express the real subject of the act so as to put the legislature and those persons who are to be affected on inquiry as to its contents, 26 *A. & E.* 580; 1 *Cooley, supra,* 300.

The authorities in dealing with the question use various phrases and terms expressive of the same meaning, such as, "fairly indicated by its title," "fairly to indicate the general subject of the act," "fairly set forth the subject of legislation," "fairly suggestive or giving clue to the subject dealt with," "fair and reasonable notice of the subject matter." 1 *Cooley, supra,* 296; 59 *C. J.* 804; 25 *R. C. L.* 848; *Somerset County Com'rs v. Pocomoke Bridge Co.,* 109 *Md.* 1, 71 *A.* 462, 16 *Ann. Cas.* 874; *Economic Power, etc., Co. v. City of Buffalo,* 195 *N. Y.* 286, 88 *N. E.* 389; *State v. Ferschke, supra.*

In determining whether the title of an act expresses its subject, the language of the whole act must be considered, as well as its manifest purpose and scope, and the Courts will take judicial notice of the laws and condi-

tions existing at the time of the passage of the act. *State v. Grier, supra.*

As said in *Sawter v. Shoenthal,* 83 *N. J. Law* 499, 83 *A.* 1004, 1005:

"The true rule is that the object expressed in the title must give notice of the effect of the legislation to one conversant with the existing state of the law. The validity of the title is not to be determined by nice distinctions of etymology or definition of words, but by facts of the case and the history of the legislation."

The first general statute with reference to drainage of lowlands was passed February 5, 1816, and is found, in *Chapter 58, Vol. 5, Laws of Delaware.* By these and subsequent statutes, embodied in the several revisions of the laws, the last being *Chapter 105, Rev. Code 1915,* the drainage of low areas has always been a matter of private initiative and expense. The machinery provided was by petition of owners of lowlands to the former Court of Common Pleas, later to the Superior Court, for the appointment of a commission to view the premises and, if found proper, to lay out the necessary ditches. The owners of the lands in the area included in the survey elected managers and a treasurer and became, when organized under the statute, a *quasi* public corporation, and were taxed upon their individual holdings, from time to time, as necessity demanded.

This was the public policy with reference to the drainage of lowlands until the enactment of the statute which is now before the Court. That policy looked at the matter as one of private endeavor and private expense and not as a general public burden; the reason, without doubt, being that it was considered unjust to subject lands not in need of drainage to taxation for the benefit of owners of lands in need thereof.

With this general history of legislation upon the subject, the provisions of the statute under attack need to be examined.

By *Section* 1, all ditches and drains in Sussex County, with a bottom of three feet or more, at the request of the Levy Court, are transferred to that body for care and maintenance, and the ditch and drainage companies thereafter are forbidden to levy any taxes for the maintenance thereof.

By *Section* 2, the Levy Court is authorized generally to lay out drainage districts.

By *Section* 3, exclusive jurisdiction to lay out ditches, and to widen, change or vacate them in all cases, is vested in the Court of General Sessions, and in the Resident Judge of the County, unless otherwise specially directed by order of the Court or Judge.

*Section* 4 provides the procedure for laying out, changing or vacating ditches or drains. Upon the petition of five or more freeholders of the County, or upon petition of the Levy Court, acting through its President, presented to the Court of General Sessions, or to the Resident Judge, and upon certain notice to the landowners, the Court or Judge is directed to appoint a commission of five freeholders of the County to view the premises, and to make a return of their proceedings. If the determination of the freeholders is that the ditch or drain is necessary for public convenience, the direction to them is to lay it out in the best way according to the nature of the ground, the distance, and other circumstances of public or private convenience. Other provisions are included in this section with respect to changing the course of, or vacating ditches and drains, the taking of sand, earth, gravel and other materials to be used in building and repairing ditches and drains, and for the assessment of damages.

By *Section* 6, petitions for laying out new ditches or

for widening, changing or straightening them, are required to be first presented to the Levy Court, which body, with the assistance of the County Engineer, is directed to make inquiry to determine the necessity, probable public benefit, and costs. If the recommendation of the Levy Court shall be adverse to the enterprise, the Judge is authorized to refuse the prayer of the petition.

*Section* 7 provides the procedure for the determination by the Levy Court as to who shall enclose the lands occupied by existing ditches and drains which have been superseded by improved ditches and drains.

By *Section* 13, the Levy Court is required annually to estimate the amount of money which will be required for the current year and to levy a tax therefor. This fund is for the general repair and maintenance of ditches and drains and for the special or permanent improvement thereof; but it is also provided that the rate of tax, when added to other rates, shall not exceed the rate of tax fixed by law which, by a separate statute, is limited to fifty cents on each one hundred dollars of valuation.

By *Section* 15, it is directly provided, without qualification or exception, that the ditches and drains of Sussex County, shall be under the management and control of the Levy Court. The work, both general maintenance and special or permanent improvement, is directed to be paid for out of the taxes levied for that purpose; is to be carried on under the immediate direction of the County Engineer; all work must cease upon the exhaustion of funds available in each year; and no contract shall be made in an amount exceeding the funds available.

It is also provided that the Levy Court shall have power to locate the courses and limitations of ditches, to

prevent encroachments thereon, and to recover damages for injuries thereto.

By *Section* 18, all acts or sections of the *Revised Statute,* together with any amendments thereto, are repealed in so far as they may be inconsistent with the provisions of the act.

Manifestly, unless the statute is void for the reasons advanced by the petitioners, this Court is without power to confirm the return of the commissioners heretofore appointed. For, quite apart from the doubt and uncertainty arising from the conflicting provisions of the statute as to the legal existence and powers of ditches and drains companies maintaining ditches of bottoms less than three feet, or ditches and drains, of whatever bottom, of which the Levy Court has not assumed control, the ditch laid out in the return of the commissioners before us is a new ditch, over which, by the statute, this Court has now no jurisdiction. Jurisdiction of ditches to be laid out, or to be widened, changed, or vacated, is, by the third section of the statute, vested in the Court of General Sessions, or in the Resident Judge of the County. The statute contains no saving clause to protect pending petitions, and hence this Court is without power to confirm. 25 *R. C. L.* 936. See *Hazard v. Alexander,* 6 *W. W. Harr.* (36 *Del.*) 212, 173 *A.* 517.

The purpose of the legislation was to establish in Sussex County a system of drainage at public expense, within the limits of an annual budget. At the request of the Levy Court the more important ditch companies are required to turn over to that body the supervision and control of the ditches and drains for the maintenance of which they were organized; and, generally, the drainage of low areas is made a matter of public necessity and convenience.

The public policy declared by statute over a century ago, and maintained steadily since, is reversed by an act whose title contains no suggestion of the subject of legislation.

The legislation is revolutionary in character, and the title of the act does not give fair and reasonable notice of the subject matter contained in the body of the act. It is expressive of nothing certain or definite, except that it has to do with ditches and drains in Sussex County. No one, lawyer, legislator or citizen, having knowledge of the public policy with respect to the drainage of lowlands, as declared and maintained by the statutes for generations, would be fairly apprised by this title, nor would he reasonably anticipate, that the more important ditch companies were substantially abolished, that the control of the important ditches was vested in the central county government, and that the drainage of low areas by an elastic system of private, co-opérative effort and expense whereby, as need arises, taxes are levied and the necessary work is done, was changed into a rigid system at the public expense, governed by unyielding budgetary requirements under which, upon the exhaustion of funds, work must cease, no matter how pressing the necessity occasioned by the seasons.

The title of the act is insufficient, deceptive and misleading having regard for the subject matter of the legislation and the laws and conditions existing at the time; and we are compelled to hold that the statute is void and of no effect, for, otherwise, the purpose and meaning of the constitutional provision is ignored.

The adjudged cases are, as may be supposed, not in harmony. Some courts regard the constitutional provision as directory merely. 25 *R. C. L.* 836. Others, by liberality of construction, practically arrive at the same result; but liberality of construction is not justified if the result

thereof is to nullify a plain mandatory provision of the organic law.

Our conception of the title of the act before us is aptly illustrated by the following authorities:

In *Davies v. Board of Supervisors,* 89 *Mich.* 295, 50 *N. W.* 862, the act was entitled "An act to provide for the construction and maintenance of stone * * * and other roads in the county of Saginaw, and to raise the money therefor." The act undertook to convert township roads into state roads, and to empower a Board of Supervisors so to convert other highways. It provided for a bond issue for the construction and maintenance of roads, and for an annual tax levy upon road districts by the board of supervisors. It took the supervision and control of roads from the township officers which had always been exercised by them and placed it in the hands of officers who were not creatures of the township.

The court held that the title of the bill was clearly misleading; that one of the purposes of the constitutional provision was to "prevent 'the insertion of clauses in the bill of which the title gives no intimation,' " that the recited provisions of the bill were not within the purview of the title, and said, "The title is innocent, the act mischievous."

In *Stegmaier v. Jones et al.,* 203 *Pa.* 47, 52 *A.* 56, the title of the act was, "An act authorizing counties of the commonwealth of Pennsylvania to purchase, maintain, use and condemn bridges, erected and in use over rivers and streams separating or dividing any part or district of such counties." It gave power to grand juries to make such purchases.

The court held the act unconstitutional and void. It pointed out that both taxpayers, as well as the county officers involved, might well suppose from the title that the

authority granted was to be exercised by the usual, duly constituted authorities, whereas, in fact, it was delegated, without any notice in the title, to a shifting and uncertain body, drawn by lot, and proceeded to say:

"How far the legislature may constitutionally change, modify, or take away the powers and duties of constitutional officers such as county commissioners, we need not now consider. But if such a change in the long-established policy, with such important and burdensome results, is to be made, it should be done openly, directly, expressly, and in such terms as to give notice to all the interests involved. The title of an act need not be an index of its contents, and, though the title may be general, it will cover all details and collateral matters naturally and properly incident to the subject named; but to omit, as the act under consideration does, all indication of its most important feature and effect, is to fail entirely in the constitutional requirement that the subject shall be clearly expressed in the title."

In *Rader v. Union Township Committee,* 39 *N. J. Law* 509, there, the title of the statute was "An act in relation to streets in Union township, Union county." The immediate purpose was to take from the officers of the township the control of streets, and to transfer the control to a corporate board. The court there said:

"It is true, that it may be difficult to indicate, by a formula, how specialized the title of a statute must be; but it is not difficult to conclude that it must mean something in the way of being a notice of what is doing. Unless it does this, it can answer no useful end. It is not enough that it embraces the legislative purpose—it must express it; and where the language is too general, it will accomplish the former, but not the latter. Thus, a law entitled 'An act for a certain purpose,' would embrace any subject, but would express none, and, consequently, it would not stand the constitutional test. And so, a law entitled 'An act in relation to silk goods,' would not indicate, in the faintest outline, a purpose to incorporate a body for the manufacture of such fabrics. Such titles would be idle and inefficacious for every purpose. And yet the latter example of a nugatory title is not unlike the one prefixed to the act under consideration. It is described as being in relation to streets in Union township, but its immediate purpose is to create a corporation to take charge of such streets. These streets, before the passage of this law, were in the hands of the officers of the township; the new scheme was to supersede such supervision, and to transfer it to a corporate board organized for that purpose. This was an important change, most materially affecting the property and personal rights of the inhabitants of the district embraced in the law; and yet it is certain the title of this statute would not have conveyed to such persons any intelligible intimation

of the project in contemplation. This statute relates to the streets only because the organization it establishes is to have the control of them, but the object of the act is the establishment of such an organization. Such object not being expressed in the title, I think the entire act is void."

The statute in question, being unconstitutional and void, it follows that the existing ditch laws remain undisturbed; and, the return of the Commissioners is approved and confirmed.