## Davis v. School District of Philadelphia et al.

*Hepburn & Norris,* for plaintiff.
*Robert von Moschzisker,* for defendants.

CRUMLISH, J., March 21, 1939.—1. This is a taxpayer's suit in equity, brought by a resident of the City of Philadelphia and of the School District of Philadelphia to test the constitutionality of section 524 of the School Code as amended [Act of May 18, 1911, P. L. 309], as further amended by the Act of December 1, 1938, P. L. 103. The answer filed by defendants raises no issues of fact, the only denials being addressed to statements of conclusions of law contained in the bill. This procedure has been adopted so as to bring the litigation to a speedy conclusion, for the public interest in this case as well as the interests of the respective litigants render expedition desirable. Accordingly, no hearing for determination of facts was held, nor were the usual requests for findings filed, but the case came on for argument before this court sitting in banc. This adjudication is presented in the form of an opinion such as would be filed sur preliminary objections since the usual form embodying formal findings is both inappropriate and unnecessary.

The prayer of the bill is that defendants be enjoined from levying and collecting, or attempting to levy and collect a tax of 10¼ mills for school purposes for the year 1939, or any other tax levied or collected by author-

ity of the terms and provisions of the Act of 1938, supra. The 10¼ mills rate was fixed in accordance with the provisions and under authority of the said act of assembly. The alleged unconstitutionality of that act is made the sole ground for relief.

2. In approaching the question under consideration, it is necessary to make a brief review of the prior legislative history of the levying and collection of taxes by school boards of first class school districts. The School Code, under which the educational system of this State is now administered, was originally enacted in 1911 (Act of May 18, 1911, P. L. 309). The code classified the school districts of the State according to population, constituting Philadelphia and Pittsburgh districts of the first class. It provided that in each first class district a board of education of 15 members should be appointed by the judges of the courts of common pleas; and it conferred upon this board extensive powers of administration over the system of public education within the district. Among these powers was the power to fix the rate of, and to enforce the collection of, an annual school tax upon the real property within the district. This grant of power was set forth in section 524 of the School Code as follows:

"In all school districts of the first class the school taxes for the following fiscal year shall be levied annually, by the board of school directors thereof, on or after the second Monday of November and before the first Monday of December following.

"The total annual school tax levy, made in any one year by any school district of the first class, shall not be less than five nor more than six mills on the dollar of the total assessment of all property assessed and certified for taxation therein."

In the case of Minsinger v. Rau, 236 Pa. 327 (1912), where, inter alia, the classification of school districts embodied in the code and the vesting of adjusting power over the tax rate in the school board were subjected to attack, the above provision of the act was upheld.

The last paragraph of section 524 of the Act of 1911 was amended by the Acts of June 21, 1919, P. L. 555, April 28, 1921, P. L. 328, and March 12, 1929, P. L. 20. Section 1 of the latter act provided:

"The board of school directors thereof shall annually levy a tax on each dollar of the total assessment of all property assessed and certified for taxation in said district, which said tax shall be ascertained, determined, and fixed by adding together the following:

"(a) An amount which, with all moneys received from the Commonwealth applicable thereto, shall be sufficient to pay the minimum salaries and increments of the teaching and supervisory staff thereof as fixed and provided by law and to pay the contributions of said district to the teachers' retirement system.

"(b) An amount sufficient to pay the interest on, and retire the principal of, the indebtedness of said district at maturity.

"(c) An amount sufficient to pay all other expenses and requirements of said school district, which amount for the tax years one thousand nine hundred and thirty and one thousand nine hundred and thirty-one shall be equivalent to not less than two and three-quarter, nor more than three and one-quarter, mills on the dollar of the total assessment of all property assessed and certified for taxation therein; and for the tax year one thousand nine hundred and thirty-two and thereafter, an amount which shall be equivalent to not less than three nor more than three and one-half, mills on the dollar of the total assessment of all property assessed and certified for taxation therein."

In 1938 the tax fixed and attempted to be collected by the Philadelphia board was challenged upon constitutional grounds, and in the case of Wilson et ux. v. Philadelphia School Dist. et al., 328 Pa. 225, the Supreme Court declared the 1929 act unconstitutional as an unlawful delegation by the legislature of its taxing power to an appointive commission. The court found that sub-

section (a) of the act failed to place a limit upon the power of the school board to increase the tax rate because, although the amount to be raised under that subsection was to be determined by the total minimum salaries as fixed by law of the teaching and supervisory staff of the district, the board was vested with unlimited discretion in determining how many persons should be employed upon the teaching and supervisory staff. Thus, while an objective standard was provided from which the tax must be computed, the very body which was to do the computing had the power to alter without limit the factual condition which was determinative of that standard. The invalidation of the 1929 act would have left the Act of 1919, supra, with its $8\frac{1}{2}$ mills maximum, in operation. The Supreme Court, however, took judicial notice of the inadequacy of this maximum millage to meet the needs of the district, and of the severe hardship which it would impose upon the public school system of Philadelphia, and, accordingly, it exerted its "inherent equity power to modify or alter decrees" and restrained defendants merely from imposing a school tax in excess of the last rate levied. The last rate levied by the Philadelphia board had been $9\frac{1}{4}$ mills. A similar suit was brought against the School District of Pittsburgh, which resulted in a similar decree. In this case, the last rate levied had been $11\frac{1}{2}$ mills. In both cases the permission to exceed the $8\frac{1}{2}$ mills maximum was granted for the years 1938 and 1939. "In the latter year", the Supreme Court said at page 248 of the Wilson case, "the legislature will be in regular session and may, if it sees fit to do so, pass an enabling act that will provide for ensuing years."

The 1938 special session of the legislature passed an enabling act (Act of December 1, 1938, P. L. 103), as suggested by the Supreme Court, the act now under attack. This act further amends the last paragraph of section 524 of the code in the following language:

"(a) An amount which, with all moneys received from the Commonwealth applicable thereto, shall be sufficient

to pay the minimum salaries and increments of the teaching and supervisory staff thereof as fixed and provided by law and to pay the contributions of said district to the teachers' retirement system.

"Provided, however, That for the purpose of computing the amount required to pay the minimum salaries and increments fixed by law, but without otherwise limiting the rights of the district to employ teachers or other employes, the number of teachers on the salary schedule of the elementary schools shall not exceed one for every thirty-two pupils in average daily attendance in such schools, the number of teachers on the salary schedule of the junior high schools shall not exceed one for every twenty-five pupils in average daily attendance in such schools, the number of teachers on the salary schedule of the senior high schools shall not exceed one for every twenty-five pupils in average daily attendance in such schools.

"The number of principals in the elementary schools shall not exceed one for every six hundred pupils in average daily attendance in such schools, and the number of principals in the junior and senior high schools shall not exceed one for every twelve hundred pupils in average daily attendance in such schools.

"The number of supervisors in all schools shall not exceed one for every fifteen hundred pupils in average daily attendance.

"The number of attendance officers and home and school visitors shall not exceed one for every two thousand pupils in average daily attendance in all elementary and secondary schools.

"In all adult and extension school classes, the number of teachers shall not exceed one for every twenty pupils in average daily attendance in such schools.

"Average daily attendance, as used herein, shall be based upon attendance during the preceding school term.

"(b) An amount sufficient to pay the interest on, and retire at maturity the principal of, the indebtedness of said district incurred as authorized by law.

"(c) An amount sufficient to pay all other expenses and requirements of said school district, which amount shall be equivalent to not less than three, nor more than three and one-half, mills on the dollar of the total assessment of all property assessed and certified for taxation therein.

"Provided, however, That no school district of the first class shall levy a tax, for the fiscal year of one thousand nine hundred and thirty-nine, in excess of one mill over the one thousand nine hundred and thirty-eight tax levy in said school district; Provided, That thereafter no school district of the first class shall levy a tax in excess of its one thousand nine hundred and thirty-eight tax levy.

"Section 2. The provisions of this act are severable and if any of its provisions shall be held unconstitutional by any court of competent jurisdiction, the decision of such court shall not affect or impair any of the remaining provisions. It is hereby declared to be the legislative intent that this act would have been adopted had such unconstitutional provisions not been included therein."

3. Plaintiff challenges the constitutionality of the act upon four grounds as follows:

I. It violates the Fourteenth Amendment of the Federal Constitution;

II. It violates the requirements of uniformity specified in article IX, sec. I, of the Constitution of this State;

III. It does not correct the mischief pointed out in Wilson et ux. v. Philadelphia School Dist. et al., supra.

IV. It violates the constitutional provision relating to local and special legislation contained in article III, sec. 7, of the State Constitution.

4. "Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation": Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551. A statute is constitutional until it is shown to be otherwise: Poor District Case (No. 1), 329 Pa. 390, 399 (1938). If a taxation statute involving classification is capable of two interpretations, one of which would provide for uniform taxes and the other not, the former interpretation is to be preferred: Rowell's Estate, 315 Pa. 181, 187 (1934). Taxation is not a matter of exact science and acts will not be condemned merely because some inequalities are brought about: Turco Paint & Varnish Co. v. Kalodner et al., 320 Pa. 421, 429 (1936). With these principles in mind we shall proceed to examine plaintiff's objections seriatim.

5. The first and second objections may be considered together. The contention that the Federal Constitution is violated is based upon a statement made by the Pennsylvania Supreme Court in Commonwealth v. Girard Life Ins. Co., 305 Pa. 558, 562 (1932), affirmed in 287 U. S. 570, 77 L. ed. 501. The question for determination in that case was the constitutionality of an act which levied an 8 mills tax upon the gross premiums received by insurance companies and which excepted from its provisions companies doing business upon a mutual plan without any capital stock and purely mutual beneficial associations. It was urged that this discrimination violated the tax uniformity clause of our Constitution (art. IX,

secs. 1 and 2) and the Fourteenth Amendment of the Constitution of the United States. It was there held (p. 562) :

"Courts, federal and state, whether construing one or the other constitutional provision, have determined that the objects of taxation may be classified. Our Constitution expressly so provides 'shall be uniform, upon the same class of subjects.' Under both 'due process' and 'equal protection' proper classification is usually a determining factor in passing upon the validity of tax legislation."

Therefore, this objection stands or falls with our decision on the question of uniformity.

As to uniformity, the Act of 1938 empowers school districts of the first class to levy annually a tax on the assessed value of property, which shall be ascertained by adding together:

(a) The minimum salaries &c., of teachers, principals, and supervisors as fixed by law, with a limitation as to numbers which shall be based upon the average school attendance for the prior year;

(b) An amount sufficient to pay the interest and sinking fund of the indebtedness of the district;

(c) An amount sufficient to pay all other expenses and requirements of the school district, which shall be not less than 3, nor more than 3½ mills on the dollars;

(d) With the proviso that no school district of the first class shall levy taxes for 1939 in excess of 1 mill over the 1938 levy in said school district and *thereafter no tax in excess of the 1938 levy.*

It is admitted that the School Board of Philadelphia had levied for the year 1938 a total tax of 9¼ mills and that the Board of Directors of the School District of Pittsburgh had levied a total tax of 11¼ mills for the same year. It is also admitted that these authorities have for the year 1939 authorized maximum school taxes of respectively 10¼ mills and 12¼ mills by virtue of the act under consideration.

Plaintiff contends that the act under consideration is violative of the uniformity clause of our Constitution because it permits a maximum tax rate in the Philadelphia district which is lower than the maximum tax rate in the Pittsburgh district. Or, to state the proposition conversely, the act offends because its provisions are not productive of the same maximum rate for each school district of the first class.

The so-called "uniformity clause", article IX, sec. 1, of the Pennsylvania Constitution, reads as follows:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax".

The term "uniformity" has been defined to mean "that all property of the same nature must be taxed alike": Harleigh Realty Company's Case, 299 Pa. 385, 389 (1930). Does the act in question conform to this requirement? At the outset it should be noted that the Constitution does not require that taxes be uniform throughout the State, but only "within the territorial limits of the authority levying the taxes." The ultimate taxing authority in this State is the legislature, and if this were "the authority levying the tax", under this clause of the Constitution, it would follow that the rate of school tax in all school districts must be uniform. But in the statute under consideration, there is a designation of agencies to assess and levy school taxes. Such a delegation is proper where the legislature fixes the maximum rate and the agency merely has the privilege of collecting the tax accordingly: Minsinger v. Rau, supra; Wilson et ux. v. Philadelphia School Dist. et al., supra. That the agency described is, for purposes of the "uniformity clause", "the authority levying the tax", even though the legislature does in effect fix the rate, seems to us the only sound and sensible interpretation of that phrase.

The most recent consideration of the meaning of "the territorial limits of the authority levying the tax" shows

that the phrase is flexible, and that it must be given a common-sense interpretation in order not to impose an unfair distribution of the tax burden: Poor District Case (No. 1), supra. That case involved an act which abolished poor districts throughout the State and which vested in the various county commissioners the power to levy special taxes, in the area comprising any former district, sufficient to pay off the debts of that district. The court held at page 408, that this provision did not violate uniformity inasmuch as "the old district, not the county, will comprise 'the territorial limits of the authority levying the tax.'" While the case is distinguishable upon the ground that there the county commissioners were simply acting as receivers to liquidate the debts of the former districts and were in a sense the "assignees" of the taxing power which had been vested in the various districts, the analogy is not inapplicable in the present case. To hold that the legislature may not set different maximum tax rates for the two districts of the first class without violating the "uniformity" requirement would be to set up a rigid and over-technical restriction conforming neither to economic realities nor to the basic principle that purely local needs should be provided for by a flexible system of local taxation.

In the instant case, it admits of no doubt that each school district of the first class is empowered to make the annual levy on property assessed and certified for taxation in its district; it is also clear that as to each school district of the first class the "territorial limits" are the limits of the particular district, and not, as plaintiff contends, the limits of all school districts of the first class; and finally that the school taxes are uniform upon the same class of subjects within said "territorial limits". It, therefore, necessarily follows that the statute under consideration does not offend against article IX, sec. 1, of our Constitution. See also Commonwealth v. McCarthy, 332 Pa. 465, 468, 469 (1938).

6. Plaintiff's next contention is that the act under consideration "does not meet the criticism of the Act of 1929 made in Wilson v. Philadelphia School District."

In Wilson et ux. v. Philadelphia School Dist. et al., supra, the Supreme Court in striking down the Act of March 12, 1929, P. L. 20, which amended section 524 of the School Code of May 18, 1911, P. L. 309, held that subsection (a) thereof amounted to an unlawful delegation of the taxing power to an appointive body. Subsection (a) of the Act of 1929 provided that one of the elements to be considered by the school directors in all school districts of the first class in levying a tax was:

"(a) An amount which, with all moneys received from the Commonwealth applicable thereto, shall be sufficient to pay the minimum salaries and increments of the teaching and supervisory staff thereof as fixed and provided by law and to pay the contributions of said district to the teachers' retirement system."

In dealing with the offensiveness of this provision, Mr. Chief Justice Kephart pointed out that although the salaries of teachers and members of the staff were fixed by law, the law did not fix the number of such employes, and that this was left to the unhampered judgment and discretion of the school directors; that the necessary number of teachers depended not only upon the number of schools in the district but also upon the type of schools and upon the determination of the board of education as to the proper number of children to be placed in each class; since the legislature had not, by this broad clause, fixed the number of schools in the district and the number of pupils to be instructed by one teacher, that the determinative fact, the most material element entering into the tax, could be created without restraint by the board of education; and that this determination can be nothing else than legislative. Subsections (b) and (c) of the Act of 1929 were held to contain definite restrictions with the possible exception of the former, under which the amount might be variable, although there was

a maximum limit; but subsection (*a*) definitely left the entire rate equation to the discretion of the school board, and was variable without limitation; Minsinger v. Rau, supra, was distinguished as being authority merely for the proposition that the legislature might designate agencies to collect school taxes provided it fixed the maximum limit.

In support of his contention, plaintiff argues that while there was an attempt to remedy the defects pointed out in Wilson et ux. v. Philadelphia School Dist. et al., nevertheless, the rate under the Act of 1938 is still variable and therefore defective. It is claimed to be variable because of the presence of other important possible variations such as: (1) The length of the school term (a change of one month affects total salaries by 10 percent); (2) the employment of teachers entitled to compensation in the lower brackets; and (3) the authorizing by Act of May 29, 1931, P. L. 243, sec. 8, 24 PS §331, amending section 401 of the School Code of 1911, of the employment of teachers and others for the maintenance of the following schools which are not mentioned in the proviso of the Act of 1938: manual training schools, vocational schools, domestic science schools, agricultural schools, kindergartens, gymnasiums, schools for the blind, deaf and mentally deficient, and truant schools.

An examination of the Act of 1931 brings to our notice that school boards may also establish, equip, furnish, and maintain, in addition to a sufficient number of elementary public schools to educate every person residing in such district between the age of six and twenty-one years who may attend, the following schools and departments for the education and recreation of persons residing in the said district: high schools, cafeterias, evening schools, libraries, museums, reading rooms, playgrounds, parental schools, and schools for adults. But does the existence of this power leave the school board with unlimited power to increase the num-

ber of employes whose salaries may be used as a measure of the millage to be levied under subsection (*a*) ? It must be remembered that it was not the power to vary, to which objection was made in the Wilson case, but that it was the power to vary upwards *without limitation.* It is defendants' contention that subsection (*a*) as amended now definitely limits the number that may be employed of every single type of employe whose salary may be used as a measure of the tax under this subsection, and that if a certain type of employe is not limited as to number, then the salaries of that type of employe may not be considered in the computation under that subsection. A careful study of the pertinent statutory provisions convinces us that this is the only possible interpretation which can be placed upon the new subsection (*a*).

The amount to be raised under this subsection is not to be measured by *all salaries* paid to employes within the school district; it "shall be sufficient to pay the minimum salaries and increments . . . as fixed and provided by law": (Act of 1938). It follows that if the salary of any employe is not "fixed by law", that salary cannot be used as a measure under subsection (*a*). An examination of the pertinent statutes reveals that *there are no members of the teaching and supervisory staff whose salaries are fixed and provided by law, whose employment is not numerically limited by the new proviso.*

Section 1210 of the School Code, as amended, fixes most of the salaries with which we are here concerned, including teachers', supervisors', and principals'. Each type of employe provided for falls clearly into one or another of the provisions of the 1938 act proviso. Upon a casual reading it might appear that the following provision refers to employes not within the proviso: Vocational, industrial, manual training, continuation school, industrial art, and similar teachers if classified in the elementary schools, shall be entitled to the salary and increments

prescribed in the schedule for elementary teachers, or, if classified in junior high schools, they shall be entitled to the salary and increments prescribed in the schedule for junior high school teachers. But it must be noticed that the 1938 act proviso limits not merely the number of teachers in the elementary and junior and senior high schools, but "the number of teachers *on the salary schedule*" of those schools. The portion of the School Code above quoted prescribes the minimum salaries and increments of those types of teachers *only if they are placed on one of these salary schedules.* Thus, if any such teachers are not numerically limited by the proviso, neither are their salaries "fixed and provided by law", in which case, as pointed out, their salaries may not be used as a measure of the tax.

Outside of section 1210, the only other salary-fixing provision refers to attendance officers or "home and school visitors": Amendment of July 1, 1937, P. L. 2560, sec. 19. These employes are likewise numerically limited by the proviso. It therefore appears that the legislature has in this proviso very carefully and thoroughly limited the number of employes whose minimum salaries and increments may be used as a measure of the amount to be raised under subsection (*a*). Each type of employe is limited in accordance with the average daily attendance of some type of pupil. It will scarcely be contended that the school board is still without restriction since it can be compelled to provide for an increasing number of pupils. The number of pupils is obviously not within the control of the school board in any public school system. It follows from what we have said that under the new subsection (*a*), as limited by the proviso, there is no unlawful delegation of the taxing power.

"Delegation to a fact-finding body of the power to do something that is in itself circumscribed, after facts are found, is not the delegation of a legislative function": Wilson et ux. v. Philadelphia School Dist. et al., 328 Pa. 225, 237. See also Locke's Appeal, 72 Pa. 491 (1873).

As to the possibility of the board's saving money by discharging married teachers and hiring others in the so-called lower salary brackets, we call attention to the Teachers' Tenure Act of April 6, 1937, P. L. 213, sec. 2, 24 PS §1126. The possibility of the board's increasing or decreasing the school term is entirely too remote to be considered seriously as a determinative factor. Furthermore, it is a factor that is merely variable; it is obviously not variable without limitation.

Four factors were considered in the Wilson case as determinative of the rate to be fixed by the board under subsection (a) of the 1929 act: (1) The number of pupils to be instructed by one teacher; (2) the number of employes; (3) the number and types of schools in the district; and (4) salary of the employes. The first two factors have been definitely fixed by the Act of 1938. As to the third factor, we have shown that while there may be variation in the tax because of the powers of the board over it, the variation is not unlimited under the Act of 1938. We recall that counsel for plaintiff admitted at the hearing that there was no charge in these proceedings that defendants had abused their discretion in this connection. The mere existence of some discretion in this respect is not objectionable so long as it is definitely limited. That the final factor is fixed is clear from Mr. Chief Justice Kephart's statement in the Wilson case (p. 235) : "the salaries of teachers and members of the staff are fixed by law".

Subsections (b) and (c) were impliedly sustained in Wilson et ux. v. Philadelphia School Dist. et al., supra (p. 237).

We now come to the consideration of the proviso which limits the rate for the year 1939 at one mill in excess of the 1938 levy; and the proviso which limits the rate thereafter to the rate of 1938 levy. Considering these provisions in connection with subparagraphs (a), (b), and (c), we find that the act clearly provides one, if not two, limitations on the extent to which school directors

may tax. Considered alone, these provisions provide a ceiling for the tax; an absolute maximum rate of tax which may be levied and collected. The 1938 levy, which is definite and known, shall not be exceeded, except for 1939, when an additional mill is allowed. If this proviso is valid, the decision in the Minsinger case forecloses any discussion of an unlawful delegation.

"The opinion of the court in considering the question of delegation to an appointive board, stated that as *the legislature had fixed the maximum limit,* there was no unlawful delegation of taxing power to an unrepresentative body": Wilson et ux. v. Philadelphia School Dist. et al., supra, at page 233.

After a most careful consideration, we are of the opinion that the Act of 1938 fixes the maximum tax levy to be made by the school districts of the first class and merely confers on the board the right to collect the tax, and thus corrects the mischief pointed out in Wilson et ux. v. Philadelphia School Dist. et al., supra.

7. Plaintiff's final objection is that the Act of 1938 violates article III, sec. 7, of the State Constitution relating to special and local legislation. The pertinent part of the said section referred to by plaintiff reads as follows:

"The General Assembly shall not pass any local or special law . . .

"Regulating the affairs of counties, cities, townships, wards, boroughs or school districts . . .

"Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes".

In support of this contention, plaintiff submits that we have before us a statute which lends legislative sanction and approval to a levy of different amounts in the two first class districts, so that by virtue of its terms a tax of ten and one quarter mills is levied in Philadelphia and twelve and one quarter mills in Pittsburgh. The pertinent part of the Act of 1938 under consideration is:

"Provided, however, That no school district of the first class shall levy a tax, for the fiscal year of one thousand nine hundred and thirty-nine, in excess of one mill over the one thousand nine hundred and thirty-eight tax levy in said school district: Provided, That thereafter no school district of the first class shall levy in excess of its one thousand nine hundred and thirty-eight tax levy."

The power to classify school districts is not an open question in Pennsylvania: Sugar Notch Borough, etc., 192 Pa. 349 (1899); Commonwealth v. Gilligan, 195 Pa. 504 (1900); Commonwealth ex rel. v. Guthrie, 203 Pa. 209 (1902); Minsinger v. Rau, supra; article III, sec. 34, Constitution of Pennsylvania. The general language of the provision of the statute under consideration cannot be said on its face to embody any local or special legislation as it is applicable to all school districts of the first class, and yet it is clear from the language itself that it may produce varying results in the school districts unless by some odd coincidence the 1938 tax levy of all first class school districts happened to be the same. Therefore, the question arises: Where general language must almost inevitably produce varying results upon the same class of subjects, is this local and special legislation? We do not think so. We have been able to discover only one case in which this precise question had been decided. In State ex rel. v. County Court, 60 W. Va. 339 (1906), a West Virginia statute was challenged upon the ground that it violated the constitutional requirement that no local or special law might be enacted where a general law might have been enacted on the subject. The act provided that no county of the State could enact a tax for the year 1905 which was more than five percent in excess of the aggregate of taxes levied by that county during the year 1904. In upholding the statute it was there held (p. 350):

"That it does not affect all alike is not conclusive of the question of the want of the necessary element of generality. While the results in the several counties may be,

and probably are, different in respect to the limitations imposed, as tested by the relation which the taxes to be raised bear toward the taxable values, they are the same as tested by the relation which the taxes . . . in each county bear to the taxes raised in the year 1904."

A further statement of the court, somewhat limiting the breadth of its holding, might at first seem to render the case not analogous to the situation in our own State: "The statute is not uniform in its operation throughout the State, but the constitutional provision under consideration, unlike those of many of the states, is content with the requirement of generality only." But, it has long been settled that the Constitution of Pennsylvania likewise does not require uniformity of operation so long as there is generality of application: Evans v. Phillipi, 117 Pa. 226 (1887); Stegmaier v. Jones, 203 Pa. 47, 50 (1902); Commonwealth ex rel. v. Middleton, 210 Pa. 582, 590 (1905); Young et al. v. Fetterolf et al., 320 Pa. 289, 302 (1936); Commonwealth ex rel. v. Brown, 210 Pa. 29, 37 (1904). There is a clear limitation of the amount which each school district of the first class may raise by taxes, and if the rate is different in different school districts of the first class, the difference arises from the local conditions such as the number of pupils attending schools, the value on which the assessors assessed the property for taxation, and other local circumstances which cannot be controlled. We, therefore, hold that, notwithstanding that the statute produces diversity of effect, it is nevertheless a general and not a local or special law.

After full and careful consideration, we reach the conclusion that all the provisions of the Act of December 1, 1938, P. L. 103, amending article IV, sec. 524, of the School Code of May 18, 1911, P. L. 309, are valid and constitutional. Accordingly, defendant may not be restrained from levying and collecting taxes in accordance with the provisions thereof.

*Decree nisi*

And now, March 21, 1939, this case having come on to be heard upon bill and answer and upon consideration thereof, it is ordered, adjudged, and decreed:

1. The bill in equity is dismissed.
2. Plaintiff shall pay the costs of this proceeding.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their counsel and unless exceptions thereto are filed within ten days, either party may present a form of final decree to be entered in the cause.